**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas John MAYBECK,
Defendant–Appellant.**

**No. 92–6449.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1993.

Decided May 6, 1994.

---

**ARGUED:** John Jacob Hoeffner, Supervising Atty., Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Robert James Conrad, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee. **ON BRIEF:** Steven H. Goldblatt, Thomas D. Bunton, Student Counsel, Mark A. Racanelli, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Thomas John Maybeck, appellant pro se. Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.

Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and SPROUSE, Senior Circuit Judge.

Reversed and remanded for resentencing by published opinion. Senior Judge SPROUSE wrote the opinion, in which Chief Judge ERVIN and Judge MICHAEL joined.

## OPINION

SPROUSE, Senior Circuit Judge:

Thomas Maybeck pled guilty to two counts of bank robbery and one count of unlawful possession of a firearm in violation of federal law. After he had filed a plea agreement but before he had been sentenced, Maybeck, during a presentencing interview, mischaracterized a previous New York state burglary conviction as one involving violence. The probation officer, including that conviction as one of two predicate felonies, calculated that Maybeck was a career offender, and the district court sentenced him on that basis without objection from either Maybeck or his counsel. After sentencing, however, Maybeck filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The district court dismissed the motion, finding that Maybeck had failed to show cause for his procedural default, as required under *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982).

Maybeck appeals. He contends that the *Frady* rule[1] does not apply to a collateral attack on a sentence imposed after a guilty plea. We disagree but hold that although such an appeal is governed by the *Frady* rule, the appeal is also subject to the "actual innocence" exception to the "cause and prejudice" requirement of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Frady*. Since the record conclusively shows that Maybeck was actually innocent of one of the predicate requirements for classification as a career offender, we reverse and remand with instructions.

## I

On October 3, 1989, Thomas Maybeck was charged in two separate indictments in the United States District Court for the Western District of North Carolina with several bank robbery offenses stemming from his robberies of a savings and loan in Charlotte, North Carolina, on two different occasions. In January 1990, Maybeck and the government entered into a plea agreement in which Maybeck pled guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g), in exchange for the government's dismissal of the other counts in the indictments. The parties stipulated that under the Sentencing Guidelines,[2] the combined offense level for these crimes was 30. The plea agreement also stated that Maybeck was to be sentenced as a career offender, that the applicable criminal history category was VI, and that the parties would waive the Presentence Report. Criminal history worksheets, which were attached to the plea agreement and which assumed career offender status without explanation, apparently provided the basis for the stipulation that Maybeck was a career offender.

After the plea agreement had been filed, probation officer David Waddell met with Maybeck and asked him if his record, as indicated on the pretrial services report, was complete. Maybeck said, evidently for the first time, that besides the convictions listed on the report,[3] he had also been convicted of an armed burglary in 1973. As it turned out, Maybeck's description of this 1973 crime as an armed burglary was erroneous. He was actually convicted under the laws of New York of attempted third degree burglary of a drug store.[4] Nevertheless, incorporating the

---

1. The *Frady* rule is that a petitioner who has defaulted procedurally in seeking correction of the errors about which he complains in a collateral proceeding must show cause and prejudice with respect to the default. *Frady*, 456 U.S. at 167–68, 102 S.Ct. at 1594–95.

2. Maybeck was sentenced pursuant to the 1988 version of the United States Sentencing Commission *Guidelines Manual*.

3. The pretrial services report indicated that Maybeck had been convicted of drug possession in 1973, for which he received a 30 day sentence;

robbery in 1973, for which he received a one year sentence; attempted armed robbery and assault with a deadly weapon with intent to kill or inflict serious injury in 1977, for which he received a sentence of 10–15 years; and two escapes in 1981 and 1983, for which he received sentences of 6–12 months and 1 year, respectively.

4. "A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y.Penal Law § 140.20 (McKinney 1987). Third degree burglary does

mischaracterized 1973 armed burglary conviction into the worksheet, Waddell calculated Maybeck's criminal history category and determined that Maybeck had 10 criminal history points, which would place him in criminal history category V. Because Maybeck was designated a career offender, however, he was placed in criminal history category VI, U.S.S.G. § 4B1.1, and his sentence was calculated accordingly.

At the sentencing hearing on February 1, 1990, the district court determined that Maybeck had entered his guilty plea knowingly and voluntarily and accepted the plea agreement. Based upon an offense level of 30 and a criminal history category of VI, the district court determined that the applicable Guideline range was 168–210 months and imposed a sentence of 198 months. Maybeck did not object to his sentence at the sentencing hearing or appeal his sentence.[5]

Later, however, Maybeck filed a § 2255 motion to vacate, set aside, or correct his sentence on the grounds that he had been improperly sentenced as a career offender and that he had not knowingly and voluntarily entered his guilty plea. The district court ordered a hearing and appointed counsel to represent Maybeck. After the hearing, the magistrate recommended that Maybeck's § 2255 motion be granted and that his convictions, as well as the dismissals of the other charges, be vacated.

On February 24, 1992, the district court declined to accept the magistrate's recommendation and dismissed Maybeck's motion. The court found that Maybeck's failure to raise his claim that he was sentenced incorrectly as a career offender at his sentencing hearing was a procedural default, and his failure to raise the issue by direct appeal constituted a second procedural default. It ruled that he failed to show cause for these defaults under the rule of *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982).[6] Maybeck appeals, and we review the district court's

conclusions of law *de novo*. *United States v. Williams*, 977 F.2d 866, 869 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993).

## II

■ In order to proceed on a § 2255 motion "based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167–68, 102 S.Ct. at 1594. The government contends that Maybeck has failed to show cause or prejudice for his procedural default. Maybeck, however, urges us to follow the approach of the Second Circuit in *United States v. Corsentino*, 685 F.2d 48, 51 (2d Cir.1982), in which the court reasoned that the circumstances surrounding unappealed guilty pleas are totally different from those presented in *Frady*. The Second Circuit granted the defendant's motion to have his sentence vacated following a guilty plea without imposing the *Frady* requirements. Although we have not previously ruled on this issue, we now hold that the *Frady* cause and prejudice standard applies to cases like Maybeck's: collateral challenges to unappealed guilty pleas. The Third Circuit, considering a similar case in *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993), reasoned:

> If defendants could routinely raise, in a § 2255 collateral proceeding, errors in sentencing not raised on direct appeal which the sentencing court had not had an opportunity to correct, Congress's intent of encouraging direct appellate review of sentences under the Sentencing Guidelines would be frustrated. Moreover, the Federal Rules of Criminal Procedure now plainly set out the procedure that must be used for challenges to presentencing reports and sentencing procedures.

*See also Reid v. United States*, 976 F.2d 446, 447–48 (8th Cir.1992), *cert. denied*, —— U.S.

---

not include the element of being armed with a deadly weapon, which is second degree burglary. *Id.* at § 140.25.

**5.** He did file an unsuccessful motion to correct or reduce his sentence pursuant to Federal Rule of Criminal Procedure 35.

**6.** *See supra* note 1.

——, 113 S.Ct. 1351, 122 L.Ed.2d 732 (1993); *Bateman v. United States*, 875 F.2d 1304, 1307 (7th Cir.1989); *Williams v. United States*, 805 F.2d 1301, 1306–07 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). Agreeing that this reasoning applies to attacks on sentences following guilty pleas, we find that the *Frady* cause and prejudice standard applies here.

■ There is no question, however, that on the record we review, Maybeck is actually innocent of being a career offender as defined in § 4B1.1 of the Guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.*

(Emphasis added). Maybeck has only one prior felony conviction that was a crime of violence,[7] and he has none that were controlled substance offenses.[8]

In a different context, the United States Supreme Court has recognized that it is an unacceptable deviation from our fundamental system of justice to automatically prevent the assertion of actual innocence simply because a defendant has not observed procedural avenues available to him. In *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982), the Supreme Court said that since the concepts of cause and prejudice are not rigid, but "take their meaning from … principles of comity and finality…., [i]n appropriate cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration…. [W]e are confident that victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." *Id.* In *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1985), the Court, although cautioning that it would not always be true, instructed that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." While recognizing that the "actual innocence" exception does not translate easily into the sentencing phase of a capital trial, the Supreme Court has applied it in those cases. *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Dugger v. Adams*, 489 U.S. 401, 410–12 n. 6, 109

---

7. A crime of violence is:

> [A]n offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense…. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

U.S.S.G. § 4B1.2(1) and comment n. 1.

The parties do not dispute that Maybeck was not convicted of armed burglary in 1973. The government argues, however, that at the time Maybeck was sentenced, it would have been permissible for the government to argue that his third degree burglary conviction was a crime of violence, making Maybeck a career offender. Under *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2294, 119 L.Ed.2d 218 (1992), a proper inquiry, for sentencing purposes, into a defendant's prior convictions should focus on the elements of the offense as opposed to the actual conduct of the defendant. The government argues that since Maybeck was sentenced in 1989,

two years before *Wilson*, a conduct-based inquiry would still be permissible. As the magistrate pointed out in his Memorandum and Recommendation, however, it is unclear that the government could have argued that the conduct underlying the attempted third degree burglary of the drug store made it a crime of violence, since it does not appear that Maybeck actually possessed a weapon or threatened the use of physical force at the time.

The other arguments that the government makes in support of its claim that Maybeck would have been sentenced as a career offender if he had been convicted of all counts at trial are similarly unsupported by the record.

8. The definition of "controlled substance offense" includes:

> [M]anufacturing, importing, distributing, dispensing, or possessing with intent to manufacture, import, distribute, or dispense, a controlled substance (or a counterfeit substance). This definition also includes aiding and abetting, conspiring, or attempting to commit such offenses, and other offenses that are substantially equivalent to the offenses listed.

U.S.S.G. § 4B1.2 comment n. 2.

S.Ct. 1211, n. 6, 103 L.Ed.2d 435 (1989); *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). The Supreme Court has not, however, applied the exception in non-capital sentencing cases,[9] although two Courts of Appeals have done so. *Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992) ("actual innocence exception applies to habitual offender proceedings ... whether or not they involve the possibility of capital punishment"); *Jones v. Arkansas,* 929 F.2d 375, 381 & n. 16 (8th Cir.1991) (defendant's claim that he was sentenced under habitual offender statute that did not apply to him came within actual innocence exception to cause and prejudice rule for habeas petitioners). *See also Smith v. Collins,* 977 F.2d 951, 959 (5th Cir.1992) (assuming, without deciding, that actual innocence exception applies to non-capital sentencing procedures), *cert. denied,* —— U.S. ——, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993); *cf. Waring v. Delo,* 7 F.3d 753, 757 (8th Cir.1993) (cautioning that "actual innocence exception in a non-capital sentencing case must be defined by a narrow, objective standard"). *But see United States v. Richards,* 5 F.3d 1369, 1371 (10th Cir.1993) (a person cannot be actually innocent of a non-capital sentence); *Higgins v. Smith,* 991 F.2d 440, 441 (8th Cir.1993) (questioning whether, after *Sawyer, Jones* is still good law in the context of a non-capital case); *United States ex rel. Henderson v. Thieret,* 671 F.Supp. 1193, 1201 (N.D.Ill.1987) (holding that "*Smith v. Murray* has no general application beyond capital cases though the proposition is not free from doubt"), *aff'd,* 859 F.2d 492 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989).

■ The government urges that the actual innocence defense is inapplicable here because it applies only to death penalty habeas challenges otherwise procedurally barred. We disagree. Except for the obvious difference in the severity of the sentences, we see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in a death case and applying a parallel rationale in non-capital cases. The more difficult conceptual barrier was overcome by the Supreme Court in *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986), and *Dugger v. Adams,* 489 U.S. 401, 410–12 n. 6, 109 S.Ct. 1211, 1217–18 n. 6, 103 L.Ed.2d 435 (1989), when it applied to sentencing review the same rationale applied to the habeas review of convictions of defendants who were actually innocent. In our view, the reasoning of *Smith* and *Dugger* logically extends to non-capital sentencing enhancement cases. In capital sentencing cases, the jury has determined guilt, and when aggravating factors are present, the sentence is enhanced to one of death. In non-capital enhancement cases, the length of a defendant's sentence may be aggravated by factors specified by statute or the Guidelines. Here, for example, the Guidelines state that the defendant's commission of two prior felonies with certain characteristics would raise him to career offender status. Hence, a defendant in either a capital or non-capital case would, unless excepted from the cause and prejudice requirement, suffer the same general consequence (an enhanced sentence) from being held responsible for an act of which he or she is actually innocent.

As the Eighth Circuit said in *Jones,* 929 F.2d at 381, "[i]t would be difficult to think of one who is more 'innocent' of a sentence than a defendant sentenced under a statute that *by its very terms* does not even apply to the defendant." In *Jones,* the defendant had been erroneously sentenced under a habitual offender statute that was not in effect at the time he had committed his crime. Although the habitual offender provisions here are inapplicable for a different reason than in

9. In *Smith v. Murray,* 477 U.S. at 538–39, 106 S.Ct. at 2668–69, the Supreme Court did imply that the actual innocence exception may apply to non-capital sentencing cases:

We reject the suggestion that the principles of *Wainwright v. Sykes* [cause and prejudice requirements in cases of procedural default] apply differently *depending on the nature of the*

*penalty* a State imposes for the violation of its criminal laws. We similarly reject the suggestion that there is anything "fundamentally unfair" about enforcing procedural default rules in cases devoid of any substantial claim that the alleged error undermined the accuracy of the guilt *or sentencing determination.*
(Emphasis added).

*Jones,* both defendants were sentenced under laws that should not have been applied to them, and the same principles apply.

▪ Circumstances of a case may dictate exceptions to the actual innocence rule. We agree with the government, for example, that the actual innocence exception in non-capital cases should not be available to a defendant who, although actually innocent of committing an aggravating act, was not prejudiced by its inclusion in the sentencing calculus. *See Sawyer,* —— U.S. at ——, 112 S.Ct. at 2525 (Court narrowed the actual innocence defense by holding that "petitioner has failed to show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty"); *Smith v. Collins,* 977 F.2d 951, 959 (5th Cir.1992) ("actual innocence in a non-capital sentencing case can be no less stringent than the Supreme Court's formulation of actual innocence in capital sentencing").

▪ The government asserts that Maybeck was not prejudiced by the denial of his § 2255 petition because he would have received an equivalent or greater sentence even if he had not been categorized as a career offender. This is not apparent from the record, however. Under the agreement negotiated between Maybeck and the government, Maybeck agreed to plead guilty to two counts of bank robbery and one count of unlawful possession of a firearm. Even if he had pled guilty to all of the counts alleged in the indictment, the maximum sentence he could have received is still less than the minimum sentence for a career offender in the same circumstances; thus, the prejudice caused by his career offender designation is apparent. Specifically, Maybeck's Guideline range for the two armed bank robberies and the § 922(g) charge would be 84–105 months.[10] Adding the 60 month mandatory sentence for the § 924(g) charge (and assuming the court would have imposed the maximum sentence for the first three charges), his maximum sentence would have been only 165 months. As a career offender, he was exposed to a minimum of 168 months.[11]

Again, assuming Maybeck would have received the maximum sentence for the crimes for which he was indicted, he would have the benefit of only a three-months shorter sentence, but we do not know if the district court would have sentenced him to the maximum. There is no dispute, however, that he was innocent of one of the convictions used to determine that he was a career offender and he was improperly sentenced as such.

▪ One of the government's other arguments is persuasive, however. The government urges that it would be prejudiced by a remand either for a new sentencing or for a new trial. It argues that the passage of time, the FBI's routine destruction of evidence, and fading memories of witnesses would handicap a prosecution. It contends that a remand simply for resentencing would also be prejudicial to its position, since it relinquished the opportunity to prosecute Maybeck on other counts when the plea agreement was negotiated. It is no overstatement to say that Maybeck has not been a model citizen; he has been incarcerated for a good part of his life and has admitted to at least six crimes and two prison escapes. The government's argument that it should not be inappropriately prejudiced in protecting the society at large from demonstrated criminal activity is persuasive, particularly under the circumstances represented here. On the other hand, even though Maybeck himself is in a large sense responsible for his being counted a career criminal, that does not completely outweigh the objective of protecting defendants from sentencing based on elements of crimes for which they are conclusively innocent. We think in this case both vital concerns can be accommodated, at least in part, by returning the parties as nearly as possible to their pre-plea agreement positions. The case is, therefore, reversed and remanded for resentencing, but after entertaining the parties' positions, the district court may, in its discretion, accept the guilty plea and resen-

---

10. His offense level would have been 23 and his criminal history category would have been V.

11. Due to his career offender status, Maybeck had an offense level of 30 and a criminal history category of VI, which carries a sentencing range of 168–210 months.

tence, or refuse to accept and vacate the guilty plea and order Maybeck and the government to enter into a new agreement. In the latter instance, if the parties fail to reach agreement, they should be ordered to proceed to trial on an appropriate indictment.

*REVERSED AND REMANDED FOR RESENTENCING.*