Scott **BRACKETT**, Petitioner,

v.

**UNITED STATES**, Respondent.

No. CIV.A. 00–12636WGY.

No. CR.A. 96–10252WGY.

United States District Court,
D. Massachusetts.

June 18, 2002.

Scott T. Brackett, FCI Otisville, Otisville, NY, Pro se.

Dina M. Chaitowitz, United States Attorney's Office, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

Scott Brackett ("Brackett") was convicted in this Court of conspiracy to distribute methamphetamines and possession of

methamphetamines with intent to distribute. Brackett had multiple prior state criminal convictions. As a result, the federal sentencing guidelines mandated that Brackett receive an enhanced sentence. After sentencing, however, Brackett was successful in overturning two of his state criminal convictions. As a result, Brackett no longer "qualifies" for the enhanced sentence imposed on him by this Court.

Recognizing this, Brackett filed a petition for writ of habeas corpus with the Court. This petition was denied due to the stringent time limitations established by the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified in relevant parts at 28 U.S.C. § 2255) ("AEDPA"). *Brackett v. United States*, 135 F.Supp.2d 112, 125 (D.Mass.2001) ("*Brackett I* ").[1] Brackett requested a certificate of appealability, which this Court granted, though the First Circuit likewise rejected his claim for relief. *Brackett v. United States*, 270 F.3d 60 (1st Cir.2001) ("*Brackett II* "). Brackett then applied for permission to file a second or successive habeas petition, which was denied by the First Circuit. Finally, Brackett filed a motion with this Court pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking relief from his sentence.

Today, Brackett is a man with only one criminal conviction that may be used in calculating his criminal sentence. Under our laws and sentencing guidelines, were he sentenced today he could serve no more than three years in prison for that crime. Instead, he is serving nine years for that crime—and was denied resentencing merely due to a missed filing deadline. In and of itself, this state of affairs does not violate any of his constitutional rights. *See, e.g., United States v. Barrett*, 178 F.3d 34 (1st Cir.1999) (discussing generally the lack of constitutional concerns where otherwise meritorious claims are denied for failure properly to comport with procedural requirements).

Nevertheless, this result is deeply troubling. It is, in fact, patently unjust—a point I made as eloquently as I know how in *Brackett I*.[2] Moreover, this Court, relying on *United States v. Pettiford*, 101 F.3d 199 (1st Cir.1996), has long advised criminal defendants, when being sentenced as armed career criminals or the like, that if they successfully overturn the enhancing predicate offense or offenses, the Court would resentence them. *See, e.g., United States v. Prochilo*, Criminal Action No. 96–10321–WGY (transcript of sentencing hearing at 2–4) (D.Mass. Mar. 26, 1998), *rev'd on other grounds*, 187 F.3d 221 (1st Cir.1999); *United States v. Gunn*, Criminal Action No. 96–10055–WGY (transcript of sentencing hearing at 17–21) (D.Mass. Feb. 28, 1997), *aff'd*, 141 F.3d 1150 (1st Cir.1998).[3] The Court sentenced Brackett,

---

1. The Court's opinion addressing Brackett's initial habeas petition is captioned *Gonzalez v. United States*. Because Brackett's petition raised issues nearly identical to those raised by a petitioner named Jose Gonzalez, the Court resolved both petitions in a single Memorandum and Order, which was entered in both cases.

2. The Court's additional concern—that AEDPA is a form of "rights stripping," a legislative technique which, though today visited on a disfavored class (repeat felons), could be expanded to threaten civil liberties generally,

*see Brackett I*, 135 F.Supp.2d at 115 n. 5—is more expansively discussed in *Developments in the Law—The Law of Prisons*, 115 Harv. L.Rev. 1838 (2002). *See especially id.* at 1863 ("The Importance of Federal District Judges"), 1864 ("The Virtues of Trial, Rather Than Appellate, Federal Courts"), 1865 ("Implications That Should Concern Even Those Who Do Not Support Prisoners' Rights").

3. Today, of course, guided by more recent decisions of the First Circuit, *e.g., Brackett*, 270 F.3d at 67–69; *Delaney v. Matesanz*, 264 F.3d 7, 14–15 (1st Cir.2001); *Neverson v. Bis-*

pre-AEDPA, with this in mind. That be-

*sonnette*, 261 F.3d 120, 127 (1st Cir.2001), the recommended practice in order to gain the benefits of *Pettiford* requires a defendant to file a generalized habeas petition virtually as soon as his conviction becomes final, but to ask the district court to stay consideration of the petition until he has had his prior state convictions vacated—an eventuality not uncommon in the Massachusetts district courts.

Consider the actual effect of these individualized attempts to do justice:

Concerned that judicial resources were being overwhelmed by the flood of habeas corpus petitions, and that petitioners obtained an unfair benefit through delay and appeal of issues long after records and the like were destroyed, *see, e.g.*, H.R.Rep. No. 104-23 at 7–11 (1995), Congress enacted AEDPA. Through AEDPA, Congress created a number of procedural hurdles designed to restrict the quantity of habeas corpus petitions. In construing AEDPA, the courts have sought to give effect to Congress's intentions, and have strictly applied and interpreted the hurdles established by AEDPA.

Congress and the courts are limited, however, in how they may restrict availability of the writ of habeas corpus. The writ of habeas corpus—often referred to as "the great writ"—is a constitutionally guaranteed writ. U.S. Const. art. I, § 9. Thus, in interpreting AEDPA, courts must be cognizant that interpreting AEDPA to pinch too tightly on access to the writ may create significant constitutional concerns. *E.g., INS v. St. Cyr*, 533 U.S. 289, 301 n. 13, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *see also* Note, *The Avoidance of Constitutional Questions and the Preservation of Judicial Review: Federal Court Treatment of the New Habeas Provisions*, 111 Harv. L.Rev. 1578 (1998). *See generally* Gerald Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 Colum. L.Rev. 961 (1998); Richard H. Fallon, Jr., *Applying the Suspension Clause to Immigration Cases*, 98 Colum. L.Rev. 1068 (1998). Accordingly, courts have been careful to note how, if a petitioner had just done the right thing, the petitioner would be able properly to present his claim and, where such claim was meritorious, would be entitled to relief. In doing so, courts demonstrate that AEDPA has not pinched too hard—the great writ is still available, so long as the petitioner has jumped through all of the hoops set up by AEDPA to ask for the writ.

This case presents a classic example—Brackett could have obtained relief, if only he had followed the counterintuitive procedure of filing a habeas corpus petition immediately after sentencing and then asking the Court to stay its hand while he pursued relief in state court.

The result of these efforts, however, has been severely to undermine the effectiveness of AEDPA in achieving its purpose. The courts have, in essence, over the past five years created a new roadmap of how prisoners may jump over the procedural hurdles of AEDPA, thereby preserving their ability to petition for the great writ. In doing so, court decisions are likely to increase significantly the burden habeas corpus petitions place on the court system. Why? Because we have basically advised every prisoner to file a habeas petition within one year of sentencing, and to then ask the court to stay any action on the petition pending resolution of other issues in state court. *E.g., Brackett*, 270 F.3d at 68 (pending collateral attack on state court conviction); *Zarvela v. Artuz*, 254 F.3d 374, 378 (2nd Cir.2001) (mixed petitions ought be filed and stayed pending state court exhaustion). Thus, rather than have some prisoners who will only petition when a potentially meritorious claim becomes available, the courts have admonished *every* prisoner to petition, just in case something develops.

Again, Brackett provides a perfect example. Very few prisoners succeed in overturning a state court conviction. Thousands of prisoners, however, attempt to have state convictions overturned. Yet the procedure the federal courts have endorsed is one in which each and every one of the thousands of prisoners is to file a habeas corpus petition before he knows the outcome of his state challenges. Thus, rather than have failure in the state court act as a natural screen, the courts' approach results in thousands of meritless petitions being filed—each of which requires a case file be opened, orders issued, papers docketed, and the file stored. In the norm, this is the approach recommended by the courts to circumvent almost all of AEDPA's hurdles. *E.g., Brackett*, 270 F.3d at 68; *Zarvela*, 254 F.3d at 378. The net result is that the burden on the courts imposed by habeas corpus petitions is likely to increase, not decrease, as the courts continue to wrestle with AEDPA.

ing the practice of this Court, it seems to me especially unjust to deny Brackett resentencing since, having relied on the practice of this Court, Brackett has found himself without recourse.

■ Stung by the fact that it is complicit in working an injustice, this Court requested the parties brief several issues. Most importantly, this Court ordered briefing on aspects of the ancient writ of error *coram nobis.* The parties, in responding to this Court's order, also addressed the ancient writ of *audita querela.* In short, the writ of error *coram nobis* is granted to correct an error of fact, unknown at trial, that affected the validity of the legal proceeding itself. *E.g., United States v. Addonizio,* 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The writ of *audita querela* provides "relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment." *United States v. Ayala,* 894 F.2d 425, 427 (D.C.Cir.1990) (citing 11 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 2867, at 235 (1973)).

■ The applicability of either writ turns on analysis of three issues. First, does the Court retain the power to issue the writ? If so, ought this petition nevertheless fall within section 2255—and thus be treated as a hopeless second or successive petition? Last, if both these questions are answered in the negative, does Brackett meet the stringent standards required of either writ?

■ In addressing these issues, the government has argued at length that section 2255 explicitly addresses Brackett's case, and thus provides the exclusive mechanism through which Brackett may seek relief. Resp't's Mem. at 11–14 [Docket No. 12]. It is well settled that the All Writs Act, 28 U.S.C. § 1651, "is a residual source of

authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Carlisle v. United States,* 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (quoting *Pennsylvania Bureau of Correction v. United States Marshals Service,* 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985)). Accordingly, the Government argues that the Court does not have the authority to issue a writ of error *coram nobis* in this situation.

It is worth noting that the Government has previously maintained exactly the opposite position in this case. During the appeal of this Court's order dismissing Brackett's habeas petition as time barred, the Government argued before the First Circuit that section 2255 was inapplicable to redress Brackett's grievance, and thus his petition ought be dismissed. Brief for Appellee at 10–27, *Brackett v. United States,* 270 F.3d 60 (1st Cir.2001) (No. 01–1466). Noting this, the Court questioned whether it ought hold the Government to its prior argument—that section 2255 is inapplicable.

■ The First Circuit limits the application of judicial estoppel to situations in which the party to be estopped is the *prevailing* party in a prior argument. *Faigin v. Kelly,* 184 F.3d 67, 82 (1st Cir. 1999). Here, even though the government asserted the argument that section 2255 was inapplicable, it did not prevail on that issue. Thus, it is inappropriate for this Court now to estop the Government from asserting a directly contrary position, even though such conduct is rather demeaning for government advocates supposedly seeking principled adjudication. Moreover, that underlying proposition—that section 2255 is inadequate to redress sentencing grievances—has been rejected by

the First Circuit. *Pettiford,* 101 F.3d at 201 (1st Cir.1996). Correction of sentences is within the scope of section 2255. The First Circuit has held that courts are without power to issue a writ of error *coram nobis* where section 2255 is available to remedy the grievance. *Barrett,* 178 F.3d at 55. As section 2255 would be competent to redress Brackett's grievances had he met its time limits, the Court lacks the power to issue either the writ of error *coram nobis* or *audita querela.*

 Furthermore, Brackett's motion is in fact a second or successive habeas petition. Though disguised as a petition for writ of error *coram nobis,* claims that are within the scope of section 2255, and could have been raised in a prior habeas petition, are in reality second or successive habeas petitions, and must meet the strict "second or successive" requirements of section 2255. *See id.* This is true whether Brackett's motion is viewed as motion pursuant to Rule 60(b) or a petition for a writ.

Brackett has not met the stringent requirements to make a second or successive petition, thus his claim cannot be considered. Moreover, his claim would be denied even if he were permitted to make a second petition. As has been affirmed by the First Circuit, Brackett missed the one-year statute of limitations applied to section 2255 petitions. *Brackett* 270 F.3d at 68. No matter how many times he petitions, he will never meet statute of limitations. His argument is destined always to fail.

Congress—in essence, the people of the United States—has determined, for various policy reasons, that it prefers that prisoners who fail to bring timely habeas claims remain in prison serving sentences three times as long as that actually provided by law for their crimes. Though the Court remains convinced that Brackett's predicament is fundamentally unjust, it is without power to rectify Brackett's grievance. Brackett's requests for relief [Docket Nos. 6, 13] are therefore DENIED. If he wishes to be resentenced, Brackett must persuade Congress to change the law or seek clemency from the President.

SO ORDERED.