Salvadore Antonio CANDELARIA,

v.

UNITED STATES of America.

C.A. No. 02–327L.

United States District Court,
D. Rhode Island.

March 5, 2003.

Salvadore Candelaria, Coleman, FL, for Plaintiff.

Zechariah Chafee, U.S. Attorney's Office, Providence, RI, for Defendant.

### DECISION AND ORDER

LAGUEUX, Senior District Judge.

Petitioner filed the present 28 U.S.C. § 2255 (2000) motion seeking vacation of his sentence and re-sentencing under the United States Sentencing Guidelines. In February 2000, petitioner was sentenced in C.R. No. 98–75L in this Court on two counts of distribution of crack cocaine. As a result of two prior state convictions, one in Massachusetts and one in Rhode Island, petitioner received an enhanced sentence pursuant to the Career Offender provision of the U.S. Sentencing Guidelines Manual § 4B1.1 (2002). In November 2001, however, the Massachusetts conviction was vacated. Consequently, petitioner now brings this habeas petition asserting that the Career Offender enhancement is no longer applicable to him, because one of the predicate convictions has been set aside.

There are two issues before this Court. First, this Court must determine whether petitioner has filed a timely § 2255 motion. If the motion is timely, then this Court must determine whether petitioner still qualifies as a career offender under the Sentencing Guidelines now that one of the predicate state convictions has been vacated.

After close examination of existing statutes and case law, this Court concludes that petitioner's § 2255 motion is timely and that petitioner is no longer a career offender as defined by § 4B1.1. Petitioner, therefore, is entitled to have his sentence vacated and to be re-sentenced under the Sentencing Guidelines.

### I. Background

On December 8, 1999, Salvadore Antonia Candelaria ("petitioner") pled guilty before this Court to two counts of distribution of crack cocaine in C.R. No. 98–75L. The Probation Department determined that petitioner qualified as a career offender under the Sentencing Guidelines § 4B1.1, because petitioner had been previously convicted of two state felony drug charges. One of the state convictions occurred in Rhode Island and the other in Massachusetts. These prior convictions placed petitioner at Offense Level 31 and Criminal History Category VI which resulted in a sentencing range of 188–235 months of imprisonment. If petitioner had not been a career offender, his Offense Level would have been 27 and his Criminal History Category would have been III, thereby producing a sentencing range of 89 to 108 months in prison. At the sentencing proceeding on February 29, 2000, this Court granted him a downward departure, because the ultimate penalty would be deportation. Consequently, this Court sentenced petitioner to 120 months in prison so that his sentence would be consistent with that received by a co-defendant.

Petitioner filed a direct appeal, and on February 27, 2001, the First Circuit affirmed his conviction and sentence. Petitioner did not file for a writ of certiorari with the United States Supreme Court. As a result, petitioner's sentence became final on May 28, 2001.

On June 11, 2001, in a pro se petition for a writ of habeas corpus, petitioner asked the Peabody, Massachusetts District Court judge who accepted his 1992 guilty plea in the drug case to set aside that conviction. Petitioner alleged that his plea colloquy had been deficient. Petitioner then retained counsel who offered the same argument in a September 17, 2001 motion and a November 7, 2001 memorandum of law. As quoted in the government's response

memorandum, on November 7, 2001, the judge stated in a margin order, "Motion allowed after a hearing and reviewing the papers on file. I have no recollection of this case." (Gov't. Resp. at 4.) The state prosecutor did not pursue the matter further.

On January 7, 2002, petitioner filed a motion under 18 U.S.C. § 3559(c)(7) (2000) in the criminal case (C.R. No. 98–075L) asking this Court to vacate the Career Offender enhancement and re-sentence him because the Massachusetts conviction had been set aside. The United States responded that § 3559(c)(7) was inapplicable and thus the motion should be denied. Petitioner responded by asking this Court to "recharacterize" the motion as one made under Rule 33 based on "newly discovered evidence" or as a "Motion Pursuant to 18 U.S.C. 3582(c) for Modification of Sentence."

On April 3, 2002, this Court issued an order denying petitioner's motion made under 18 U.S.C. § 3559(c)(7) and his motion to recharacterize without prejudice.

On April 25, 2002, petitioner again made a motion in the criminal case for modification of his sentence under 18 U.S.C. § 3582(c)(1)(B) (2000). The Government responded to that motion by pointing out that he must have meant 18 U.S.C. § 3582(c)(1)(B) (2000) but that the section created no basis for relief in this case. The Government pointed out that this Court could construe the motion as a petition under 28 U.S.C. § 2255 if the Court in accordance with *Raineri v. United States*, 233 F.3d 96, 100 (1st Cir.2000) secured the "informed consent" of the petitioner.

Petitioner replied on May 28, 2002 that he was aware of *Raineri* and wanted "his Motion construed as a § 2255 petition if necessary for this Honorable Court to give him the relief he is requesting." (Gov't. Resp. at 4.)

The Court issued a Memorandum and Order dated June 11, 2002 stating as follows:

Defendant has moved for modification of an imposed term of imprisonment under 18 U.S.C. § 3582(c). This is the second time that defendant has made such a motion in this criminal case. The previous motion was made under 18 U.S.C. § 3559(C)(7). That motion was denied because that statute was clearly inappropriate. The present motion is likewise based on an inapplicable statute. Clearly, no part of Section 3582(c) is applicable to this case as the government has pointed out in its response.

The government suggests that the Court might consider this filing as having been made under 28 U.S.C. § 2255 and proposes an elaborate order for the Court to enter, notifying defendant of his rights. The Court does not choose to follow that procedure.

If defendant wishes to file a petition to vacate or modify the sentence previously imposed by this Court pursuant to 28 U.S.C. § 2255, then the defendant should do so. It is not the function of the Court to advise defendant on how to proceed.

If defendant files such a petition, he would become the petitioner and the United States would be the respondent. It would be designated as a separate civil action and treated as such. The government would then have an opportunity to respond to that petition.

The bottom line in this criminal action is that defendant's motion to modify his sentence under 18 U.S.C. § 3582(c) hereby is denied.

Petitioner then filed a § 2255 petition on July 19, 2002 seeking to have his sentence vacated because the Career Offender enhancement in the Guidelines no longer ap-

plied and requesting that he be re-sentenced.

## II. Discussion

### A. Timeliness of Motion under § 28 U.S.C. 2255

Petitioner has filed a motion under The Antiterrorism and Effective Death Penalty Act of 1996 (codified in relevant parts at 28 U.S.C. § 2255) ("AEDPA") seeking to be re-sentenced under the Sentencing Guidelines, because one of the state convictions which served as the basis for his Career Offender enhancement has been vacated. Before this Court can consider whether petitioner is entitled to relief under the substantive law, this writer must determine whether petitioner has met the "where" and "when" procedural requirements of § 2255.

■ The first question this Court must answer is whether petitioner challenged the validity of his state conviction in the proper court. *See Brackett v. United States,* 270 F.3d 60, 65 (1st Cir.2001). With the exception of a conviction that violates the right to counsel under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the constitutionality of a state conviction may not be challenged at the outset in federal court. *Brackett,* 270 F.3d at 65. The Supreme Court has stated that a defendant can challenge the validity of a state conviction in federal court only after exhausting his state remedies. *Daniels v. United States,* 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001). That is, once the defendant can no longer challenge the state conviction on

direct appeal or in a state post-conviction proceeding, the defendant may then petition a federal court for relief under 28 U.S.C. § 2254 (2001). *See Brackett,* 270 F.3d at 66. The First Circuit in *Brackett* noted that § 2255, which is the habeas statute for defendants in federal custody, is ordinarily interpreted the same as § 2254, which is the habeas statute for defendants in state custody. *Id.* Thus, regardless of which section a petitioner invokes, he must first challenge the validity of a state conviction in state court. *Id.* In the case at bar, petitioner did in fact challenge his state conviction in a Massachusetts state court. The Massachusetts court determined that the conviction should be vacated, and petitioner, therefore, has satisfied the procedural "where" requirement.

Having disposed of the "where" question, this Court must now consider the "when" question. That is, this Court must determine whether the § 2255 motion was timely filed. Section 2255(4) imposes a one year statute of limitations on all habeas petitions which begins to run from the latest of four possible dates. The first and fourth possible dates outlined in the statute are relevant to the case at bar. Thus, the statute of limitations for petitioner's motion began to run on "(1) the date on which the judgment of conviction becomes final .... [or] (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."[1] 28 U.S.C. § 2255.

---

1. The other two possible dates from which the statute of limitations could run include:

 [T]he date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a mo-

 tion by such governmental action [and] the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *Id.*

The First Circuit has explained that a conviction "does not become final until 'the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires.'" *Derman v. United States,* 298 F.3d 34, 41 (1st Cir.2002) (quoting *Kapral v. United States,* 166 F.3d 565, 577 (3rd Cir.1999)). In *Derman,* the First Circuit explained that a defendant has ninety days from the date the judgment was entered to file a petition for a writ of certiorari to the Supreme Court of the United States. *Id.* at 39. Thus, if a defendant chooses not to petition the Supreme Court, the conviction becomes final upon the expiration of that ninety day period. Petitioner, in the present case, did not seek a writ of certiorari. Therefore, petitioner's judgment of conviction became final in accordance with § 2255(1) on May 28, 2001, because the time for filing expired ninety days after the First Circuit affirmed petitioner's conviction and sentence on February 27, 2001. Consequently, the one year statute of limitations under § 2255(1) dictated that petitioner seek relief in federal court before May 28, 2002.

In a case similar to the one at bar, the First Circuit addressed the question of when a petitioner's conviction becomes final when the petitioner asks a federal court to reduce his enhanced sentence after one of the underlying predicate state convictions has been vacated. *Brackett,* 270 F.3d at 61. The Court held that a conviction becomes final on the date on which a petitioner learned or should have learned, through the exercise of due diligence, the facts which supported the petitioner's claim to vacate the state conviction. *Id.* at 68. Thus, the issue before this Court with regard to § 2255(4) is when petitioner learned or should have learned, through the exercise of due diligence, the facts which would require a Massachusetts court to vacate his drug conviction.

In petitioner's Memorandum of Law in Support of Motion to Vacate and Correct Sentence, he asserts that he is a pro se petitioner who speaks no English, is virtually uneducated and is completely untrained in the law. (Pet'r Mem. at 3.) He claims in Petitioner's Reply to Government's Response to Petitioner's Motion that he essentially "plodd[ed] around in the dark" looking for a viable means by which to challenge his federal sentence, once a fellow prisoner informed him that his plea colloquy and other aspects of his state conviction were unconstitutional. (Pet'r Reply at 3.) Thus, petitioner asserts that under § 2255(4), the facts supporting his claim did not become known to petitioner until his federal conviction was finalized. (Pet'r Mem. at 4.) Petitioner claims that once he was advised of his rights, he exercised due diligence in seeking to have his state conviction vacated. (*Id.*)

The government, however, paints a very different picture of petitioner's legal maneuvers. In its response to petitioner's motion, the government asserts that petitioner was aware of his § 2255 remedies for a significant period of time, because he had been receiving legal advice from a fellow prisoner since at least June 2001. (Gov't Resp. at 4.) The government, therefore, claims that petitioner chose not to file a § 2255 motion for strategic reasons. (*Id.*) Indeed, there is at least some support for the government's argument in the petitioner's own memo. Despite petitioner's assertions to the contrary, this Court surmises that petitioner might well have been aware that he could seek federal habeas relief, because petitioner sought comparable relief in the state system "in response to advice from a fellow prisoner who was

versed in [the] law." (Pet'r Mem. at 3.) Thus, this Court questions whether petitioner was blindly grasping at legal straws.

 Nevertheless, although this Court is troubled by the possible exercise of legal gamemanship on the part of petitioner, this Court also recognizes that petitioner's lack of English skills and formal education undoubtedly played a significant role in his inability to assert his constitutional rights at the time of his plea colloquy. However, gamemanship or no gamemanship, this Court's hands are tied by judicial precedent. The First Circuit has made clear that the facts which matter for the purposes of exercising "due diligence" under § 2255(4) are "evidentiary facts or events and not court rulings or legal consequences of the facts." *Brackett*, 270 F.3d at 69. In *Brackett*, the Court pointed out that the petitioner knew of the basic historical facts which rendered his state court conviction invalid. *Id.* That is, the fact that Brackett was intoxicated and the fact that the colloquy was incomplete were known long before Brackett's federal sentencing. *Id.* The mere fact that Brackett may not have known of the facts' legal significance was of no consequence.[2] *See id. See also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir.2000) (explaining that the actual or imputed discovery of a claim's factual predicate triggers § 2244, not a petitioner's awareness of the facts' legal significance).

Consequently, the "facts" which matter in the present case are those which existed at the time of the plea colloquy-namely, that petitioner was not advised of the factual basis of the charges against him, that he was not informed of the state's burden of proof, that he was not told which constitutional rights he would forego by pleading guilty, and that he was not notified that he was facing deportation upon entering a guilty plea. Whether petitioner knew of the legal consequences of those "facts," i.e. that the state conviction, therefore, was invalid, is irrelevant for § 2255 purposes.

Furthermore, even if petitioner was not aware of the "facts" at the time of the colloquy, he was certainly aware of the facts after speaking with his fellow prisoner who advised him that his state conviction was invalid. Thus, the statute of limitations certainly began to run no later than June 11, 2001 when petitioner filed his state habeas petition seeking reversal of the state drug conviction. The problem, however, is that petitioner did not formally file a § 2255 petition until July 19, 2002, at which point the one year statute of limitations expired whether the limitations period began to run on May 28, 2001 or June 11, 2001. (*See* Gov't Resp. at 4, 7–8.)

 A question, however, remains: does petitioner's request to this Court on May 23, 2002 to have his 18 U.S.C. § 3582(c) motion construed as a § 2255 petition qualify as a timely filing?[3] Simply put, the answer is yes.

---

2. The First Circuit noted that although other circuits often focus on the language of § 2244 to determine whether a petitioner has exercised due diligence in ascertaining the requisite statutory facts that would support granting relief from a state conviction, the same analysis applies to § 2255 which grants post-conviction relief from a federal conviction. *Id.*

3. Given that petitioner attempted to file his § 2255 motion on May 23, 2002, this Court

need not determine whether the one year statute of limitations was triggered on May 28, 2001 in accordance with § 2255(1) or on June 11, 2001 under the "due diligence" requirement of § 2255(4). If petitioner's request to recharacterize the § 3582(c) motion as a § 2255 motion was in fact a proper filing on May 23, 2002, then the motion was timely regardless of which date triggered the statute of limitations.

 **131**

This Court recognizes that federal courts must be especially attentive to the rights of pro se parties. *See Raineri v. United States*, 233 F.3d at 97. *See also Chambers v. United States*, 106 F.3d 472, 475 (2nd Cir.1997) (explaining that "[i]t is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petitioner is entitled to."). Courts often recharacterize motions by pro se petitioners who rely on improper rules or statutes in order to grant those persons relief. *See Raineri*, 233 F.3d at 97. As was previously discussed, however, this Court scorns *any* party's attempt to engage in legal games, regardless of whether that party is represented by counsel or not. Nevertheless, while the possibility that petitioner intentionally refused to file a § 2255 motion for strategic reasons gives this writer pause, in light of the deference that federal courts often extend to pro se parties, and given that petitioner's request to recharacterize his petition was made at least five days before the one year statute of limitations expired, this Court concludes that petitioner's attempt to recharacterize his § 3582(c) motion qualifies as a timely § 2255 filing for purposes of the one year

statute of limitations under the AEDPA.[4] In short, petitioner filed his petition within a reasonable time after the Court, in effect, told him he could do so. Having determined that the § 2255 petition was timely, this Court now turns to petitioner's substantive habeas claim.

### B. Actual Innocence

 Petitioner spends a substantial amount of time arguing that he is actually innocent of the Career Offender provision of the Sentencing Guidelines. His argument, however, is premised on a misunderstanding of the ruling in the Fourth Circuit case of *United States v. Mikalajunas*, 186 F.3d 490 (4th Cir.1999). Although petitioner correctly points out that the Fourth Circuit in *Mikalajunas* acknowledged that the actual innocence exception is available in non-capital cases in the post-AEDPA era where the Career Offender provision is at issue, petitioner misapplies that court's reasoning to the case at bar.

In *Mikalajunas*, the Fourth Circuit reaffirmed its ruling in the pre-AEDPA case, *United States v. Maybeck*, 23 F.3d 888 (4th Cir.1994). In *Maybeck*, that Court explained that the actual innocence exception

**4.** Since petitioner's § 2255 motion was timely, this Court need not determine whether the doctrine of equitable tolling would have provided petitioner relief in the event this Court had found that the statute of limitations had expired. This Court simply notes that the First Circuit has clearly stated that the doctrine should apply only in extremely rare cases in which "extraordinary circumstances" exist. *Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir.2001). Equitable tolling is appropriate only "when circumstances beyond a litigant's control have prevented him from promptly filing." *Lattimore v. Dubois*, 311 F.3d 46, 55 (1st Cir.2002). The First Circuit has explained that equitable tolling might be appropriate in a Career Offender enhancement case when a federal prisoner, at the time of his federal sentencing, was actually innocent of the state crime, yet did not be-

come aware of the facts which would prove his innocence until the one year statute of limitations under the AEDPA had expired. *Brackett*, 270 F.3d at 70. Therefore, this Court surmises that equitable tolling would not have been appropriate in petitioner's case, since he had been receiving legal advice from a fellow prisoner for a substantial period of time prior to May 23, 2002, and as such may have been aware that he had the option of filing a federal habeas petition. Simply put, a lack of familiarity with the legal system itself does not qualify as an extraordinary circumstance that would excuse a late filing: even for pro se petitioners. *See Lattimore*, 311 F.3d at 55. Consequently, had this Court not determined that the filing was timely, the doctrine of equitable tolling would likely not have entitled petitioner to relief under § 2255.

may be invoked in a petitioner's § 2255 motion to challenge the sentence imposed for a non-capital offense. 23 F.3d at 892. What petitioner in the present case fails to note, however, is that the actual innocence exception applies to this type of situation only when a predicate offense which was used to support a sentencing enhancement was not a qualifying predicate offense at the time of the petitioner's federal sentencing. *See id.* That is, in order for a defendant to be deemed a career offender under the Sentencing Guidelines, at the time of the federal sentencing, the defendant must have, at a minimum, two prior felony convictions.[5] U.S.S.G. § 4B1.1(a)(3). Furthermore, those felony convictions must be for violent crimes or controlled substances. *Id.* Thus, as *Maybeck* explains, if one of the predicate offenses which was used to support the sentencing enhancement was not a crime of violence or a controlled substance offense, then the petitioner would be actually innocent of the Career Offender enhancement. 23 F.3d at 892–893.

In the case at bar, however, the two predicate offenses that justified the finding that petitioner was a career offender under § 4B1.1 of the Sentencing Guidelines were two felony drug convictions-one from Rhode Island and one from Massachusetts. Both the Rhode Island and Massachusetts convictions at the time of petitioner's federal sentencing were valid and involved controlled substances. Therefore, both were appropriate convictions to be used as predicate offenses for purposes of the § 4B1.1(a)(3) Career Offender enhancement provision. Consequently, the mere fact that the Massachusetts drug convic-tion was later vacated does not justify invoking the actual innocence exception, because § 4B1.1 only requires that the conviction be a qualifying predicate offense *at the time of the federal sentencing.*

### C. Re-sentencing under the Sentencing Guidelines

■ Nevertheless, although the actual innocence exception does not justify re-sentencing petitioner in this case, the mere fact that his Massachusetts conviction was vacated requires this Court to re-open petitioner's federal sentence.

Whether a petitioner who has filed a timely § 2255 motion should be re-sentenced in federal court after a state conviction, which served as a predicate offense for § 4B1.1 purposes, has been vacated, is an unanswered question in the First Circuit. Nevertheless, although the circuit has not addressed this issue as it relates to the Sentencing Guidelines, it has concluded that re-sentencing under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1) (2000), may be necessary when a petitioner's state conviction, which warranted a sentencing enhancement under the Act, has been vacated. *U.S. v. Pettiford,* 101 F.3d 199 (1st Cir.1996).

In *Pettiford,* the defendant, who was convicted in March 1991 of being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g)(1) (2000), received a minimum mandatory sentence of fifteen years in prison under the ACCA, because he had been previously convicted of nine violent state felonies. *Id.* at 200. Approximately two years after his federal sentencing, however, the defendant requested audio-

---

**5.** (a) A defendant is a career offender if (1) the defendant

 was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

 U.S.S.G. § 4B1.1(a).

tapes of his guilty pleas and sentencing proceedings from the Boston Municipal Court and the Dorchester District Court in order to challenge the constitutionality of his plea colloquies. *Id.* He was, however, unable to procure any useful tapes and instead had to reconstruct the proceedings with affidavits.[6] *Id.* As a result, the Boston Municipal Court and the Dorchester District Court vacated eight of the nine state convictions on the grounds that the Commonwealth had failed to meet its burden of producing a record showing that the defendant had knowingly and voluntarily waived his rights during those proceedings. *Id.* Thereafter, the defendant filed a habeas petition with the District Court for the District of Massachusetts seeking to be re-sentenced in light of his vacated convictions. The district court granted the defendant's request and re-sentenced him to the four and one half years he had already served.

The First Circuit affirmed the district court's holding based on the Supreme Court's decision in *Custis v. United States,* 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). In *Custis,* the Supreme Court held that a defendant could not attack the validity of a state conviction during a federal sentencing proceeding unless the challenge was predicated on the denial of the right to counsel as established in *Gideon.* *Id.* at 496–97, 114 S.Ct. 1732. Nevertheless, the Court noted that a defendant could attack his state convictions in state court or through federal habeas review. *Id.* at 497, 114 S.Ct. 1732. If the defendant's petition proved to be

successful, he could then ask a federal court to re-open any federal sentence that was enhanced by the vacated state convictions. *Id.*

The First Circuit in *Pettiford* adopted both the procedural rule from *Custis* and its accompanying dicta. The Circuit, therefore, determined that Pettiford's federal sentencing should be re-opened, because the ACCA was no longer applicable to him given that his state convictions had been vacated. *See* 101 F.3d at 201. Indeed, this appears to be the majority rule as numerous circuits have reached the same conclusion with regard to sentencing enhancements under the ACCA. *See, e.g., United States v. Snyder,* 235 F.3d 42, 52 (1st Cir.2000) (reaffirming the holding in *Pettiford* that a "conviction expunged after sentencing can no longer serve as a predicate for a § 924(e) sentencing enhancement."); *United States v. Walker,* 198 F.3d 811, 814 (11th Cir.1999); *Turner v. United States,* 183 F.3d 474, 477 (6th Cir.1999); *United States v. Bacon,* 94 F.3d 158, 161 n. 3 (4th Cir.1996); *United States v. Cox,* 83 F.3d 336, 339–340 (10th Cir.1996); *United States v. Nichols,* 30 F.3d 35, 36 (5th Cir. 1994).

Thus, the question that remains is whether the majority rule applies not only to enhancements under the ACCA, but also to enhancements imposed under the Sentencing Guidelines. This Court concludes today that if re-sentencing is warranted when an enhancement under the ACCA is at issue, then re-sentencing is warranted when the enhancement resulted from applying the Sentencing Guidelines.[7]

---

**6.** The defendant in *Pettiford* was unable to get any records from the Boston Municipal Court, because more than two and a half years had passed since the taking of defendant's guilty pleas. 101 F.3d at 202. Consequently, the records had been destroyed pursuant to Special Rule of the District Courts 211A(4) (1997). *Id.* The defendant was able to procure only unintelligible tapes from the Dorchester District Court. *Id.*

**7.** Magistrate Judge Cohen noted in *United States v. Cavallero,* 1999 WL 33117096, *6 n. 4 (D.Me.1999) that there is no reason to distinguish between the ACCA and the Sentencing Guidelines when a defendant seeks to re-

There is simply no logical reason to sentence defendants more harshly under the Sentencing Guidelines than under the ACCA.

The Ninth Circuit reached this conclusion in *United States v. LaValle*, 175 F.3d 1106 (9th Cir.1999). In *LaValle*, that Court held that a defendant whose state conviction has been vacated may seek review of any federal sentence that was enhanced because of the state conviction, regardless of whether the enhancement was made pursuant to the ACCA or § 4B1.1 of the Sentencing Guidelines. *See id.* at 1108. The Second Circuit, in fact, expanded on *LaValle* and held in *United States v. Doe*, 239 F.3d 473, 474–75 (2nd Cir.2001) that a defendant who successfully attacks a state conviction may move to be re-sentenced under the Sentencing Guidelines even if the enhancement did not result from an application of the Career Offender provision in § 4B1.1.

Nevertheless, this Court must note that a petitioner's opportunity to pursue re-sentencing via this method does not last forever. As the District Court of Massachusetts pointed out in *Gonzalez v. United States*, 135 F.Supp.2d 112, 120 (D.Mass. 2001), we live in a post-AEDPA world. This means that a petitioner who pursues relief under § 2255 is bound by the one year statute of limitations. *Id.* at 115. This Court recognizes that a petitioner who seeks to be re-sentenced, because a state conviction has been vacated, must act without delay, because the failure to bring a timely § 2255 motion may result in an exceedingly harsh sentence.[8] Indeed, it appears that Congress and more specifically, the people of the United States, have determined that "prisoners who fail to bring timely habeas claims [must] remain in prison serving sentences three times as long as that actually provided by law for their crimes." *Brackett v. United States*, 206 F.Supp.2d 183, 187 (D.Mass.2002). As Chief Judge Young explained, if a § 2255 motion is not timely, a petitioner who wishes to be re-sentenced must either "persuade Congress to change the law or seek clemency from the President." *Id.* Thus, it is imperative for a petitioner who seeks relief under § 2255 to comply with the one year statute of limitations.

Fortunately for petitioner in this case, his § 2255 motion was timely. Thus, petitioner has met the procedural requirements set forth by the AEDPA. This Court, therefore, concludes that his federal sentence must be vacated and he must be resentenced, because petitioner (1) filed a timely § 2255 motion, and (2) successfully attacked a state conviction which served as the basis for a sentencing enhancement under the Career Offender provision of § 4B1.1 of the Sentencing Guidelines.

### III. Conclusion

For the aforementioned reasons, petitioner's motion to vacate his sentence

open his federal sentence once a predicate state conviction, which served as a basis for a sentencing enhancement, has been vacated.

8. As a practical matter, a defendant who wishes to receive the protections of *Pettiford* must essentially file a habeas petition with the district court once his conviction becomes final, but he must then ask the court to stay consideration of the petition until the defendant successfully attacks his state convictions. *See Brackett*, 206 F.Supp.2d at 184 n. 3. This Court agrees with Chief Judge Young who

pointed out that the courts in recent years have in essence created a perverse incentive system under the AEDPA whereby every prisoner must petition for habeas relief "just in case something develops" down the road. *Id.* Thus, rather than streamlining the habeas system and encouraging only meritorious petitions, the courts' interpretation of the AEDPA is likely to encourage a dramatic increase in the number of habeas petitions, thereby placing a potentially significant burden on the judicial system.

made pursuant to 28 U.S.C. § 2255 is granted. Petitioner no longer qualifies as a career offender under § 4B1.1 and is thereby entitled to be re-sentenced under the United States Sentencing Guidelines that do apply to him.

It is so ordered.