Rehearing granted, July 21, 2010

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

No. 09-4119

ANTOINE JEROME PETTIFORD,

*Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(1:02-cr-00522-BEL-1; 1:05-cv-02321-BEL)

Argued: March 24, 2010

Decided: June 3, 2010

Before TRAXLER, Chief Judge, and WILKINSON and
DUNCAN, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Duncan wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson joined.

## COUNSEL

**ARGUED**: Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC

DEFENDER, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Michael J. Leotta, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellee.

---

## OPINION

DUNCAN, Circuit Judge:

Appellee Antoine Jerome Pettiford pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and received an enhanced sentence of 188 months' imprisonment, in part because he had five prior convictions which qualified him as a career criminal under the provisions of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e). Two of the five state court convictions were subsequently vacated, and Pettiford brought a petition under 28 U.S.C. § 2255 for post-conviction relief from the enhanced federal sentence. The district court granted Pettiford's petition, holding that as a result of the vacatur of the two state convictions, Pettiford was entitled to relief. The district court then resentenced Pettiford to a term of 100 months' imprisonment. For the reasons that follow, we reverse the district court's order and remand with instructions to reinstate Pettiford's original sentence.

### I.

On November 21, 2002, a grand jury charged Pettiford with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The grand jury determined that on July 4, 2002, Pettiford, "having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess . . . a Smith & Wesson .40 caliber semi-automatic pistol." J.A. 11.

On April 1, 2003, the United States Probation Office issued a criminal history report (the "Special Report"), in which it considered whether Pettiford was subject to an enhanced criminal sentence under the ACCA. The ACCA provides that if a person who violates § 922(g) has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). Because Pettiford had eight prior violent and serious drug felonies, the United States Probation Office concluded that he qualified for an enhanced sentence under the ACCA.

In a May 28, 2003, letter, Pettiford contested the validity of three of the eight convictions as ACCA predicates, and the Special Report was revised to eliminate them on July 9, 2003. Thereafter, on October 6, 2003, the government filed a Notice/Information of Enhanced Penalties, in which it explained that Pettiford was subject to the enhanced penalty provisions of § 924(e)(1), based in part on the following five state convictions: (1) a 1993 conviction for possession with intent to manufacture narcotics; (2) a 1994 conviction for breaking and entering a dwelling, battery, malicious destruction, and assault; (3) a 2001 conviction for second-degree assault; (4) a 2002 conviction for possession with intent to distribute cocaine; and (5) a 2002 conviction for conspiracy to distribute and possession with intent to distribute cocaine.

Pursuant to a written plea agreement, signed on January 16, 2004, Pettiford pleaded guilty to the charged offense. In that agreement, Pettiford stipulated that he was "an Armed Career Criminal subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." J.A. 18. He further stipulated that

> based on the Notice/Information of Enhanced Penalties filed by the United States on October 6, 2003, and as found by the U.S. Probation Office in its pretrial criminal history report, Mr. Pettiford has three

> or more prior convictions which qualify him as a Armed Career Criminal subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e).

J.A. 19. The district court confirmed that Pettiford agreed that he was subject to an ACCA enhanced sentence in its plea colloquy, and again at sentencing.[1] Thereafter, the district court sentenced Pettiford to 188 months' imprisonment, and Pettiford did not appeal this sentence.

Before sentencing, Pettiford filed in state court a *coram nobis* petition for post-conviction relief, seeking to vacate his two 2002 convictions. On September 7, 2004, after Pettiford had been sentenced in federal court, the Circuit Court for Baltimore County vacated the two 2002 convictions, concluding that the sentences had been illegal because the court imposed an invalid period of incarceration as a condition of probation. Almost a year later, on August 15, 2005, Pettiford filed a petition under 28 U.S.C. § 2255 for post-conviction relief from the enhanced federal sentence in the District Court of Maryland.

In his pro se § 2255 petition, Pettiford contended that he was entitled to relief because as a result of the vacatur of the two 2002 drug convictions, he no longer qualified as an armed career criminal. Specifically, he argued that his 1993

---

[1]At sentencing, Pettiford's counsel suggested that Pettiford's 1993 conviction for possession with intent to manufacture narcotics might not count as an ACCA predicate offense because he thought that under Maryland law the maximum sentence for conspiracy to distribute cocaine was five years, which would not meet the threshold for a "serious offense" under 18 U.S.C. § 924(e)(2)(A)(ii). Counsel, however, later retracted that suggestion, noting that he "had someone check and ask around, and it appears that in fact the maximum penalty may actually [have] been 20 years, . . . not five." J.A. 82. The district court did not consider this issue because Pettiford's counsel, upon further inquiry, explained that resolution of this issue was irrelevant to his client's ultimate designation as an armed career criminal in light of Pettiford's four other qualifying convictions.

drug conviction could not have been an ACCA predicate conviction because, he alleged, "the judgment and transcript do not show whether [he] was convicted of conspiracy to possess with intent to distribute a controlled substance or conspiracy to merely possess a controlled substance (which [was] Mr. Pettiford's recollection)." J.A. 193. Because his 1993 drug conspiracy conviction was merely a possession offense, Pettiford maintained that he had only two remaining convictions that qualified for ACCA purposes, not three.

On January 11, 2007, the district court issued an order appointing a Public Defender to represent Pettiford, and requiring the Public Defender to verify whether, in addition to the 1993 conviction, Pettiford wished to challenge any of the other non-vacated qualifying convictions. In response to this order, on June 15, 2007, the Public Defender filed a memorandum of law explaining that Pettiford challenged the use of all his predicate convictions. The government filed a response to this memorandum on July 6, 2007, arguing, inter alia, that Pettiford was procedurally barred from challenging the use of the three predicate convictions because these challenges "were not raised at trial or on direct appeal, and the defendant neither offer[ed] cause excusing this failure nor c[ould] he show prejudice from not having raised the arguments." J.A. 232. As a result, in a reply, the Public Defender clarified that for § 2255 purposes, only the two 2002 vacated convictions should be considered, and that Pettiford's challenges to the three remaining predicates were "not [a] part of his habeas petition [but] instead[ ] they [were] relevant considerations at a resentencing following the grant of his habeas petition."[2] J.A. 250. In other words, Pettiford asked the district court to bifurcate the proceedings.

On November 24, 2008, the district court granted Petti-

---

[2]Later, Pettiford conceded that the 1993 conspiracy conviction qualified as an ACCA predicate. Thus, Pettiford maintained that only the 1994 and 2001 convictions were to be considered at resentencing.

ford's § 2255 petition and ordered that he be resentenced. The district court granted Pettiford habeas relief because "two of his qualifying convictions [had been] vacated after his initial sentence." J.A. 263. The district court recognized that even with the two 2002 drug convictions vacated, Pettiford's record "retain[ed] three convictions that might enhance his sentence under § 924(e)," J.A. 266, but nevertheless granted Pettiford a resentencing based on an "examination of [Pettiford's] remaining ACCA qualifying convictions . . . akin to what would occur at a re-sentencing proceeding," J.A. 267. In doing so, the district court decided that Pettiford's conviction for Maryland assault in 2001 was not a violent felony under the ACCA. Relying on *Shepard v. United States*, 544 U.S. 13 (2005), and *United States v. Simms*, 441 F.3d 313 (4th Cir. 2006), the district court explained that when analyzing whether a conviction is a violent felony under the ACCA, courts cannot consider documents "that are not incorporated into the charging document." J.A. 269. Because the only basis for concluding that Pettiford's 2001 assault might be a violent felony is found in a Statement of Probable Cause, which was not incorporated into the charging document, the district court concluded that the 2001 assault conviction was not a violent felony, and thus could not be counted. Disregarding both the 2001 assault conviction and the two sentences vacated by the Maryland state courts, the district court found "that Pettiford has two remaining ACCA qualifying convictions . . . [and] no longer qualifies" for an enhanced sentence under the ACCA. J.A. 270.

On December 8, 2008, the government filed a motion for reconsideration, which the district court denied on January 7, 2009. Pettiford was subsequently resentenced on January 8, 2009 to 100 months in prison. This appeal followed.

## II.

On appeal, the government contends that the district court erred in granting Pettiford's § 2255 petition, because even

after the vacatur of Pettiford's two drug convictions, Pettiford still had three qualifying predicate convictions. Pettiford responds that a defendant need only show that some of his underlying predicate convictions were vacated to be entitled to § 2255 relief. However, in the event we find otherwise, he argues that his challenges to the other predicate convictions should be considered as part of his habeas claim, and that if he failed to challenge these convictions, that failure should be excused because he can show cause and prejudice for the procedural default. Alternatively, he maintains he is "actually innocent of the enhancement," and thus, the district court did not commit error in granting the petition. Appellee's Br. at 15. We consider each argument in turn. In so doing, we review legal issues de novo and factual findings under a clear error standard. *United States v. Roane*, 378 F.3d 382, 395 (4th Cir. 2004).

## A.

We first consider the government's argument that the district court erred in granting Pettiford's § 2255 petition on the basis of Pettiford's two vacated convictions.[3]

---

[3]Pettiford's § 2255 petition maintained that he was entitled to habeas relief solely because two of his five ACCA-predicate convictions had been vacated. Admittedly, in his initial § 2255 petition, Pettiford did challenge the predicate status of his 1993 drug conviction. Later, however, he clarified that for § 2255 purposes only the two 2002 vacated convictions should be considered, and that his "challenges to the three remaining predicates [were simply] re-sentencing issues." J.A. 259. The district court accepted this clarification, explaining that "Pettiford's challenge to [the remaining] convictions" were not "a part of his § 2255 petition." J.A. 267. Instead, the court's "examination of his remaining ACCA qualifying convictions [was] akin to what would occur at a re-sentencing proceeding," *after* § 2255 relief was granted. J.A. 267. Thus, in considering whether to grant Pettiford's § 2255 petition to begin with, the district court considered only whether Pettiford was entitled to relief as a result of the vacatur of his two state convictions.

In *Custis v. United States*, 511 U.S. 485, 497 (1994), the Supreme Court observed that if a defendant "is successful in attacking [his] state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences." Later, in *Daniels v. United States*, 532 U.S. 374, 382 (2001), the Court again noted that if a challenge to an underlying conviction is successful in state court, "the defendant may then apply for reopening of his federal sentence," but added that if the prior conviction is no longer open to direct or collateral attack in its own right, then the federal prisoner can do nothing more about his sentence enhancement. Finally, in *Johnson v. United States*, 544 U.S. 295, 310 (2005), the Court reiterated the holdings of *Custis* and *Daniels*, adding, inter alia, that from the date the district court enters judgment in the federal case, the defendant is obliged to act diligently to obtain the state-court order vacating the predicate conviction.

In accordance with this line of cases, this court, when reviewing sentences imposed under the career offender guideline, has concluded that sentence enhancements based on previous convictions should be reconsidered if those convictions are later vacated. *See United States v. Gadsen*, 332 F.3d 224, 228 (4th Cir. 2003) (noting that a defendant may apply for a reopening of his federal sentence once he has successfully challenged the underlying conviction).[4] Specifically, this court has held that if a defendant "succeeds in a future collateral proceeding in overturning his [state] conviction, federal law enables him then to seek review of any federal sentence that was enhanced due to his state conviction." *United States v. Bacon*, 94 F.3d 158, 161 n.3 (4th Cir. 1996). Given this language, the district court determined that Pettiford was entitled

---

[4]*Custis*, *Daniels*, and *Johnson* apply "whether the sentence enhancement was imposed because of the ACCA or because of the Sentencing Guidelines." *Gadsen*, 332 F.3d at 228 n.3 (internal quotations and citation omitted); *see also United States v. Arango-Montoya*, 61 F.3d 1331, 1336 (7th Cir. 1995); *United States v. Jones*, 27 F.3d 50, 52 (2d Cir. 1994) (per curiam); *United States v. Garcia*, 42 F.3d 573, 581 (10th Cir. 1994).

to § 2255 relief because he had successfully challenged in state court two state sentences that had been used to enhance his federal sentence.

However, as noted by the government, even without the two vacated state convictions, Pettiford's record retains three convictions that support enhancing his sentence under § 924(e). Thus, the issue before us is whether a petitioner is entitled to § 2255 relief after successfully attacking some of his predicate sentences if those vacated convictions are not necessary for the armed career criminal designation. Neither we nor the Supreme Court have addressed this specific issue.[5] And although, since *Custis*, several other circuits have held or indicated that a defendant may be able to receive § 2255 relief if he has successfully challenged in state court a state conviction previously used in enhancing the federal sentence, in each of these cases, the state sentences at issue, if vacated, would have lowered the defendant's conviction count below the minimum number necessary to enhance the sentence. *See, e.g.*, *United States v. Doe*, 239 F.3d 473, 475 (2d Cir. 2001); *United States v. LaValle*, 175 F.3d 1106, 1108 (9th Cir. 1999); *United States v. Walker*, 198 F.3d 811, 813 (11th Cir. 1999); *United States v. Pettiford*, 101 F.3d 199, 200 (1st Cir. 1996); *Young v. Vaughn*, 83 F.3d 72, 73 (3d Cir. 1996); *United States v. Cox*, 83 F.3d 336, 339 (10th Cir. 1996); *United States v. Rogers*, 45 F.3d 1141, 1143 (7th Cir. 1995); *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994).

To determine whether Pettiford should have been awarded habeas relief and had his sentence reopened on the ground that two of the five convictions used to support his sentence

---

[5]*Custis*, *Daniels*, and *Johnson* all dealt with defendants whose enhanced sentences might have been materially impacted by the vacatur of the challenged state convictions. *See Custis*, 511 U.S. at 497 (attacking two of three predicate convictions); *Daniels*, 532 U.S. at 374 (attacking two of four predicate convictions); *Johnson*, 544 U.S. at 295 (attacking one of two predicate convictions).

were later vacated, we must look to the language of 28 U.S.C. § 2255. Section 2255 provides that habeas relief should be awarded where

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). Once the petitioner has shown this, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* Thus, a district court's resolution of a prisoner's § 2255 petition proceeds in two steps. *See United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007). First, the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds. *Id.* Second, if the prisoner's sentence is found unlawful on one of those grounds, the district court should grant the prisoner an "appropriate" remedy, which includes discharge, resentencing, or a new trial. *Id.* If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, "the court must deny the petition." *Id.*

Pettiford cannot meet the threshold inquiry, in that he has failed to establish any of the specified grounds for rendering the sentence unlawful. First, he cites no precedent, nor do we find any, suggesting that, in this situation, Pettiford was sentenced in violation of the Constitution. Second, he points to nothing in the record, nor are we able to find anything, to suggest that the district court did not have jurisdiction. Third, the sentence was authorized by law because the vacatur of the two 2002 convictions did not render Pettiford's ACCA sen-

tence invalid as a threshold matter. Section 924(e)(1) establishes a mandatory minimum sentence of fifteen years without parole for any person convicted of a violation of 18 U.S.C. § 922(g) who has three or more previous convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). After the vacatur of the two 2002 convictions, three predicate convictions remained in Pettiford's record. Thus, the statutory preconditions for sentence enhancement were still present, and Pettiford's sentence was still subject to enhancement pursuant to the ACCA. Finally, we do not believe that the sentence is "otherwise open to collateral attack." 28 U.S.C. § 2255(a). The Supreme Court has interpreted the phrase "otherwise subject to collateral attack" as involving a claim of "error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 186 (1979); *see also United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (holding that a sentence is subject to collateral attack if "the district court received 'misinformation of a constitutional magnitude' and . . . the district judge relied at least in part on that misinformation" (quoting *United States v. Spiropoulos*, 976 F.2d 155, 163 (3d Cir. 1992)). There is no evidence that Pettiford's sentencing was constitutionally defective or flawed in a fundamental way. Indeed, in his habeas petition, Pettiford made no such claim.

Instead of finding that Pettiford's sentence was unlawful on one of the specified grounds, the district court granted Pettiford § 2255 relief on the assumption that vacatur of any predicate sentence automatically entitles a petitioner to habeas relief without further inquiry. *See* J.A. 266 ("[T]his Court . . . finds that Pettiford's subsequently vacated convictions entitle him to a re-sentencing."). This was error. Vacatur alone does not entitle a petitioner to habeas relief. Rather, as we stated in *Bacon*, vacatur entitles a petitioner to "seek review." 94 F.3d at 162 n.3. In seeking review, however, the petitioner must still meet his burden of showing that his sentence is unlawful on one of the specified grounds, because only after

determining that a sentence is unlawful can the district court vacate and set aside the sentence. *See Hadden*, 475 F.3d at 661. Here, not only did Pettiford fail to show that his sentence was rendered unlawful by the vacatur of his two 2002 convictions, but also the district court failed to make this inquiry before finding that Pettiford was entitled to § 2255 relief.

Admittedly, after granting § 2255 relief, the district court did determine that Pettiford's sentence was unlawful. After concluding that "Pettiford's subsequently vacated convictions entitle[d] him to [habeas relief]," J.A. 266, the district court considered Pettiford's remaining ACCA qualifying convictions "akin to what would occur at a re-sentencing proceeding," J.A. 267, and determined that without his 2001 assault conviction, Pettiford's sentence exceeded the maximum sentence allowed by law because the sentence could no longer be enhanced under the ACCA.[6] In so doing, however, the district court inverted the § 2255 process. Pursuant to *Hadden*, the district court had to determine whether Pettiford's sentence had been rendered unlawful on one of the specified grounds by the vacatur of his two 2002 convictions before vacating and setting aside the sentence. *See* 475 F.3d at 661. By doing otherwise, the district court bypassed the threshold inquiry of whether Pettiford's § 2255 petition, on its face, sufficiently established that Pettiford's sentence was "rendered without jurisdiction," "imposed in violation of the Constitution or the laws of the United States," or that it was "otherwise subject to collateral attack." 28 U.S.C. § 2255.

---

[6]The government argues that the district court committed error in allowing Pettiford, after the court granted him § 2255 relief but before fashioning a remedy, to argue that his remaining ACCA qualifying convictions were not predicate offenses under the ACCA. The district court reasoned that irrespective of whether these challenges are procedurally barred, "[t]he more efficient rule is to permit defendants to raise such arguments after they have had other convictions vacated and the arguments could have an actual impact on their sentences." J.A. 267. Because we find that the district court erred in granting Pettiford's § 2255 motion, we need not decide whether the district court's consideration of these challenges, in order to determine Pettiford's appropriate remedy, constitutes error.

The flaw in the district court's approach is made manifest by the fact that, by virtue of the vacated convictions, Pettiford argued on collateral review the applicability of case law that would not be available to others similarly situated. Below, Pettiford argued that his 2001 assault conviction could not be counted as an ACCA predicate because it was not a violent felony. His argument principally relied on *Shepard*, 544 U.S. at 21, in which the Supreme Court held that to determine whether a conviction constitutes a violent felony, a court may not go "beyond conclusive records made or used in adjudicating guilt and look[ ] to documents submitted to lower courts even prior to charges," and on *Simms*, 441 F.3d at 317, in which we held that a court may not consider documents that are not "expressly incorporated into [the] charging document." Relying on these cases, Pettiford argued that his 2001 assault could not be classified as a violent felony because the only basis for such a conclusion is found in a Statement of Probable Cause which was not incorporated into the charging document. The district court agreed with Pettiford, citing *Shephard* and *Simms* for support. Neither *Shephard* nor *Simms*, however, were available to Pettiford at the time of the original sentencing, nor have they been found to be retroactively applicable. *See United States v. Davis*, 133 F. App'x 916 (4th Cir. 2005); *see also United States v. Christensen*, 456 F.3d 1205, 1207-08 (10th Cir. 2006); *Corey v. United States*, 221 F. App'x 1 (1st Cir. 2007); *United States v. Armstrong*, 151 F. App'x 155, 157 (3d Cir. 2005). And, as we have noted, the district court reached this inquiry only because it bypassed the threshold determination of whether Pettiford's § 2255 petition, on its face, sufficiently established that Pettiford's sentence was unlawful on one of the specified grounds.[7]

---

[7]Furthermore, the district court's actions effectively allowed Pettiford to raise challenges that were procedurally barred. Pettiford could have challenged the adequacy of classifying his 1993, 1994, and 2001 convictions as ACCA predicates at the original sentencing and on direct appeal, and because he did not do so, those challenges are barred unless Pettiford can "show cause and actual prejudice . . . or . . . that a miscarriage of justice

In sum, because the district court failed to hold Pettiford to his burden of showing that the vacated sentences rendered his federal sentence unlawful on one of the specified grounds—a burden the record demonstrates he could not meet—we agree with the government that the district court erred in granting Pettiford § 2255 relief.[8]

## B.

Although Pettiford characterized his challenges to the remaining three convictions as resentencing issues in the district court, on appeal, he argues that we should consider his challenges to the 1994 and 2001 predicate convictions as part of his habeas petition. If we do so, he asserts that we should find him entitled to § 2255 relief. Because Pettiford never challenged his three remaining predicate convictions at sentencing or on direct appeal, he would typically be "barred from raising the[se] claim[s] on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006); *see also United States v. Emanuel*, 869 F.2d 795, 796 (4th Cir. 1989) (non-constitutional issues are deemed waived in a § 2255 motion

---

would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). Pettiford, however, was not required to show cause and prejudice or a miscarriage of justice because the district court accepted Pettiford's argument that his challenges were to be considered after the court granted him § 2255 relief. Effectively, the district court allowed Pettiford to forego the burden of showing cause and prejudice or a miscarriage of justice, but nevertheless considered Pettiford's attacks on his 1994 and 2001 convictions to determine that his sentence was unlawful. The entire § 2255 process was therefore turned on its head.

[8]The government also argues that should we find that the district court properly granted Pettiford § 2255 relief, then we must find error in the district court's willingness to allow Pettiford to "revise unilaterally the terms of his plea agreement," in which he affirmed, more than once, that he was subject to an ACCA sentence. Appellant's Br. at 27. Because we find the district court erred in granting Pettiford's § 2255 petition, we need not address the binding effect of Pettiford's plea agreement.

if they were not raised on direct appeal). The Supreme Court has recognized an equitable exception to the bar, however, when a habeas applicant can demonstrate cause and prejudice, or actual innocence. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see also Mikalajunas*, 186 F.3d at 492-93. We thus consider whether Pettiford has shown cause and prejudice, or actual innocence, below.

1.

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains . . . ." *Mikalajunas*, 186 F.3d at 492-93. "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Id.* at 493.

Pettiford maintains that cause existed to excuse his default because he had no legal basis to challenge the predicate convictions at the original sentencing.[9] He explains that at the initial sentencing, his two 2002 drug convictions had not yet been vacated, and in the absence of these reversals, he still had three prior serious drug offenses—the two 2002 drug convictions and the 1993 drug conspiracy conviction—on his record to qualify him as an armed career criminal independent from the 2001 assault conviction and the 1994 breaking and entering conviction. As a result, he argues, any challenge to his ACCA status, or the underlying sentences, at his original sentencing would have been futile.

---

[9]Pettiford also explains that the prejudice suffered here is obvious. The ACCA enhancement increased his statutory maximum penalty from ten to fifteen years, and his sentencing guideline range from 84-105 months to 188-235 months. Because we find that Pettiford cannot show cause, we need not determine whether Pettiford has shown sufficient prejudice. *See, e.g.*, *Mikalajunas*, 186 F.3d at 493-94 (discussing only the element of cause). The exception requires a showing of both cause and prejudice.

As a preliminary matter, the government asserts, and our review of the record reveals, that Pettiford never argued cause and prejudice below. Instead, Pettiford maintained that his challenges to the 1994 and 2001 convictions were resentencing issues, not habeas issues, and thus he was able to forego showing cause and prejudice. In the briefs below, Pettiford's counsel explained, "[T]he challenges to Mr. Pettiford's other prior convictions are not part of his habeas petition. . . . Mr. Pettiford has not sought to amend his habeas petition to include these challenges." J.A. 250-51. Similarly, counsel maintained, "[T]he criminal history challenges to the three remaining predicates are re-sentencing issues, not habeas claims." J.A. 259. It is settled in this circuit that failure to present an argument to the district court constitutes waiver before this court. *United States v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005). Further, the Supreme Court recently held that an argument not presented to the federal district court in a habeas petition is forfeited and cannot be advanced at the merits stage, on appeal. *McDaniel v. Brown*, 130 S. Ct. 665, 675 (2010) ("Recognizing that his . . . claim cannot prevail, respondent tries to rewrite his federal habeas petition. His attempt comes too late, however, and he cannot now start over.").

Nonetheless, assuming arguendo that Pettiford's current "cause" theory is properly before us, we are unable to find any external impediments resulting in counsel's failure to challenge the 1994 and 2001 convictions at sentencing, or on direct appeal. On the contrary, the record shows that trial counsel did challenge three of the eight predicate convictions listed on the Special Report. "[A] petitioner cannot establish cause when the facts underlying the claim were in existence and were available upon a reasonably diligent search," *Rose v. Lee*, 252 F.3d 676, 687 (4th Cir. 2001), and here, the facts underlying Pettiford's challenges to the 1994 and 2001 convictions were available at Pettiford's sentencing.

Further, Pettiford's alleged basis for demonstrating cause has no recognition in the law.[10] *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 623 (1998) (finding that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time" (internal quotations and citation omitted)); *Richardson v. Turner*, 716 F.2d 1059, 1061 (4th Cir. 1983) (holding the same). If we were to accept Pettiford's argument—that cause exists to excuse procedural default where the defendant believes that challenging a predicate sentence would be futile—then there would be no reason for a defendant to challenge his predicate convictions during sentencing, unless he could attack a sufficient number of sentences to bring his predicate count below the number necessary for the enhancement. All other challenges would be handled by the courts on collateral attack, thereby rendering meaningless our longstanding commitment to the finality of judgments. *See, e.g.*, *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (emphasizing finality over the correction of errors); *McCleskey v. Zant*, 499 U.S. 467, 490-91 (1991) (same); *Wainwright v. Sykes*, 433 U.S. 72, 89-90 (1977) (same). We cannot agree to this. Habeas review extracts significant costs from judicial, defense, and prosecutorial resources. *Schneckloth v. Bustamonte*, 412 U.S. 218, 259-60 (1973) (Powell, J., concurring). More importantly, as the Supreme Court said in *McCleskey*, we do not want "habeas corpus review [to] give litigants incentives to withhold claims for manipulative purposes and [to] establish disincentives to present claims when evidence is fresh." 499 U.S. at 491-92; *see also Reed v. Ross*, 468 U.S. 1, 13 (1984); *Wainwright*, 433 U.S. at 89. Instead, if an attack on a predicate sentence can be raised at sentencing, that attack should be handled by the sentencing judge, irrespective of whether a successful challenge would render a sentencing enhancement obsolete.

---

[10]Nor is it clear why it would have been futile for Pettiford to challenge the 1994 and 2001 convictions at sentencing or on direct appeal. Pettiford filed the *coram nobis* petition for post-conviction relief, seeking to vacate his two 2002 convictions, before his original sentencing took place.

Thus, because we find that Pettiford has failed to demonstrate cause to excuse his failure to challenge the 1994 and 2001 predicate sentences at sentencing or on direct appeal, we cannot excuse his procedural default.

2.

With Pettiford having failed to demonstrate cause and prejudice to excuse his procedural default, the question remains whether he can show actual innocence. Pettiford contends that he should be granted habeas relief because he is "actually innocent of the enhancement," Appellee's Br. at 15, in that his record does not have "three previous convictions . . . for a violent felony or a serious drug offense," 18 U.S.C. § 924(e)(1). Aside from the two vacated convictions, he notes that his 2001 assault conviction could not be considered a "violent felony" for ACCA purposes, and thus, he contends, the basis for the district court's original ACCA finding vanished because three ACCA predicates no longer remain.

Our court has previously ruled that the actual innocence exception may be applied in § 2255 to noncapital sentencing proceedings. *United States v. Maybeck*, 23 F.3d 888, 892-94 (4th Cir. 1994); *see also Mikalajunas*, 186 F.3d at 494. To succeed on actual innocence grounds, however, "a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d 494. Furthermore, the "movant must show actual innocence by clear and convincing evidence." *Id.* at 493.

Pettiford's argument on this point suffers from multiple infirmities. To begin with, a federal sentencing proceeding is not ordinarily an appropriate forum in which to challenge the validity of a prior state conviction. Whether petitioner is actually innocent of a prior state offense is a claim to be tested

through the normal processes of trial and appeal and any appropriate post-conviction proceedings. A federal sentencing court cannot be expected to hold a re-trial of prior state convictions, and even if the resources to do so were available, a respect for state courts would dictate that the validity of state convictions be resolved not in federal sentencing proceedings but in the manner that Congress and the Supreme Court have set forth. We earlier noted that the Supreme Court in a trio of cases has counseled against using federal sentencing proceedings as a forum for collateral attacks on state convictions. *See Johnson*, 544 U.S. at 303 (Congress did not intend "to make it so easy to challenge final judgments that every occasion to enhance a sentence for recidivism would turn a federal sentencing court into a forum for difficult and time-consuming reexaminations of stale state proceedings."); *Daniels*, 532 U.S. at 381-82; *Custis*, 511 U.S. at 496-97. In this regard, any argument of actual factual innocence of the remaining convictions has not been accepted by any court or in any forum in which Pettiford could be expected to move to set the conviction aside.

Pettiford further misinterprets our holdings in *Mikalajunas* and *Maybeck*. Irrespective of our holding in *Mikalajunas*, Pettiford maintains that for purposes of proving actual innocence in the context of eligibility for application of the ACCA, Fourth Circuit precedent requires only that he show that the district court erred in applying the statute. His argument principally relies on our holding in *Maybeck*. In that case, the defendant was originally sentenced as a career offender under the Sentencing Guidelines based on two prior convictions noted in the presentence report as crimes of violence.[11] The

---

[11]We recognize that *Maybeck* concerns the career offender provision of the Sentencing Guidelines, and not the ACCA. Nevertheless, in *Mikalajunas*, we noted that under the reasoning of *Maybeck*, "actual innocence applies in . . . the context of eligibility for application of a career offender *or* other habitual offender . . . provision." 186 F.3d at 495 (emphasis added). To reach its holding, *Maybeck* relied on cases concerning various

defendant did not object to his classification as a career offender at the sentencing hearing or appeal his sentence. Later, however, the defendant filed a § 2255 petition on the ground that he had been improperly sentenced as a career offender; the defendant explained that he had erroneously informed the probation officer that he had been convicted for armed burglary, which is categorically a crime of violence under the federal Sentencing Guidelines, when in fact he had been convicted for attempted third-degree burglary, which is not. The district court denied the petition, finding that the defendant's failure to raise his claim at his sentencing hearing and by direct appeal constituted a procedural default.

On appeal, however, we reversed and remanded for resentencing. Specifically, we found that the defendant was actually innocent of being a career offender because he was innocent of one of the convictions used to determine that he was a career offender. And although we recognized that defendant's challenge to this predicate sentence was procedurally barred, we excused the misstep, noting that "it is an unacceptable deviation from our fundamental system of justice to automatically prevent the assertion of actual innocence simply because a defendant has not observed procedural avenues available to him." 23 F.3d at 892.

Pettiford contends that *Maybeck* stands for the proposition that the actual innocence exception applies to excuse a procedural default whenever a movant is "innocent" of any sentencing enhancement alleged to be error. And because, he argues, the § 924(e) enhancement was erroneously applied to him, he

habitual offender statutes. *See* 23 F.3d at 893. We see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence under the Sentencing Guidelines and applying a parallel rationale in cases concerning the ACCA. *See id.* (noting that "[i]n noncapital enhancement cases, the length of a defendant's sentence may be aggravated by factors specified by statute or the Guidelines").

concludes that he is "actually innocent" of that adjustment. We disagree.

Pettiford misinterprets our holding in *Maybeck*. We granted relief in *Maybeck* because the defendant clearly showed that he had not committed the crime on which the calculation of his sentence was based. *See id.* at 894 ("There is no dispute . . . that [the defendant] was innocent of one of the convictions used to determine that he was a career offender and he was improperly sentenced as such."). It was uncontested that the defendant in *Maybeck* had not committed one of the underlying predicate convictions. *See id.* at 892 n.7 ("The parties do not dispute that [defendant] was not convicted of armed burglary in 1973."); *see also Mikalajunas*, 186 F.3d 494 (finding that a petitioner is factually innocent if he shows that he "did not commit the crime of which he was convicted"). The defendant's sentence was therefore erroneously enhanced by an armed burglary conviction that he simply did not have.

Pettiford, by contrast, makes no suggestion whatsoever that he did not actually commit the 2001 assault. Rather, he makes the legal argument that this conviction should not have been classified as a "violent felony" under the ACCA.[12] This argument, even after *Maybeck*, is not cognizable as a claim of actual innocence. *See Mikalajunas*, 186 F.3d at 495 (limiting *Maybeck* to its facts and finding that actual innocence does not extend to non-factual challenges to the application of sentencing enhancements); *see also Poindexter v. Nash*, 333 F.3d 372, 381-82 (2d Cir. 2003) (rejecting a claim of actual innocence, premised on the argument that defendant's three convictions should have been treated as a single conviction

---

[12]Likewise, the two 2002 convictions were vacated on legal, rather than factual, grounds. They were vacated not because Pettiford did not commit the crimes, but instead because the state court "imposed an invalid period of incarceration as a condition of probation, and that sentence [was] irreconcilable with the terms of [Pettiford's] plea agreement." J.A. 186.

because he was sentenced for all three convictions on the same date, because such an argument is legal, not factual, and thus "not cognizable as a claim of actual innocence"). Under the reasoning of *Maybeck*, actual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from uncontested actual innocence of the predicate crimes, and not from the classification of the predicate crimes. *See* 23 F.3d at 894 (noting that in extending actual innocence to the habitual offender context, our objective is to "protect[ ] defendants from sentencing based on elements of crimes for which they are conclusively innocent").

Thus, we find that Pettiford cannot demonstrate actual innocence to excuse his procedural default. *Maybeck* does not excuse his failure to challenge his remaining qualifying predicates at sentencing or on direct appeal.[13]

III.

In conclusion, we hold that the district court erred in granting Pettiford's § 2255 petition, because Pettiford did not show, nor could he show, that the vacated sentences alone rendered his federal sentence unlawful on one of the specified grounds. We also hold that by failing to challenge his remaining predicate sentences at sentencing or on direct appeal, Pettiford procedurally defaulted on his claim that the district court improperly enhanced his sentence under the ACCA. Finally, we hold that under *Maybeck*, actual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from actual innocence of the predicate crimes. Accordingly, we reverse and remand this

---

[13]The government also argues that, irrespective of our understanding of *Maybeck*, Pettiford would not be entitled to relief because his challenge to the 2001 assault conviction is predicated on case law that was not available to Pettiford at the original sentencing, or that is retroactively applicable. Because we find that Pettiford cannot demonstrate actual innocence to excuse his procedural default, we need not address this argument.

case to the district court with instructions to reinstate Petti-ford's original sentence.

*REVERSED AND REMANDED WITH INSTRUCTIONS*