**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-7675**

_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

    v.

TORRANCE JONES, a/k/a Tube,

               Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:96-cr-00079-BO-1; 5:12-cv-00121-BO)

_____

Argued: March 18, 2014          Decided: July 14, 2014

_____

Before NIEMEYER, KING, and AGEE, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee joined. Judge King wrote a separate opinion dissenting in part and concurring in the judgment in part.

_____

**ARGUED:** Coreen Mao, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Shailika K. Shah, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Stephen L. Braga, Kevin Cope, Benjamin Hayes, Third Year Law Student, Caroline Schmidt, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker,

Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

NIEMEYER, Circuit Judge:

Torrance Jones was convicted in 1996 on federal cocaine trafficking charges and sentenced to 360 months' imprisonment. His sentence was enhanced by, among other things, two prior Florida state court convictions. Following his sentencing and appeal, Jones filed a motion under 28 U.S.C. § 2255 in October 2000 for post-conviction relief, which the district court denied. We dismissed Jones's subsequent appeal.

Thereafter, Jones challenged his two Florida state convictions and obtained vacaturs of both, one in 2004 and the other in 2008. He then filed two motions in federal court under 28 U.S.C. § 2241 and Federal Rule of Civil Procedure 60(b)(5), challenging the sentence imposed for his 1996 federal conviction because his Florida state convictions had been vacated. The district court treated his motions as § 2255 motions and denied them as successive.

Finally, in March 2012, Jones filed the instant § 2255 motion, arguing that it was not successive because he had obtained the vacaturs of the Florida convictions after he had filed his first § 2255 motion. The district court, however, denied this § 2255 motion as untimely under 28 U.S.C. § 2255(f)(4) because it was not filed within one year after Jones learned of his Florida state vacaturs.

3

Jones now argues on appeal that his failure to meet the requirements of § 2255(f)(4) should not bar his § 2255 motion because the vacaturs of his state convictions rendered him "actually innocent of his sentence." In making this argument, he relies on the recent Supreme Court decision in McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013), which held that a defendant who demonstrates actual innocence of his crime of conviction may, in extraordinary circumstances, proceed with a habeas petition that otherwise would have been statutorily time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Jones asks that we extend McQuiggin's holding to provide relief to defendants who demonstrate actual innocence of their sentences, thus providing Jones an avenue to bypass § 2255(f)(4)'s 1-year statute of limitations. We decline to do so and affirm the judgment of the district court.[1]

I

Jones's 1996 conviction resulted from his involvement in a substantial cocaine distribution conspiracy. He was convicted in the Eastern District of North Carolina on one count of conspiracy to possess with intent to distribute cocaine and

---

[1] Because we hold that Jones's § 2255 motion is time-barred by § 2255(f)(4), we do not reach the question raised by the government of whether it was successive and therefore also barred under 28 U.S.C. § 2255(h).

4

cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. During sentencing, the district court found that Jones maintained a managerial role in the offenses and was accountable for trafficking in 79 kilograms of cocaine and 26.3 kilograms of cocaine base, which, under the Sentencing Guidelines, resulted in an offense level of 40. The court found that Jones's criminal record established a criminal history category of III, based on a juvenile adjudication and two Florida state court convictions -- one in 1990 for misdemeanor possession of marijuana and one in 1994 for carrying a concealed firearm, loitering or prowling, and possession of burglary tools. The offense level and criminal history category resulted in an advisory Guidelines sentencing range of 360 months' to life imprisonment. The court sentenced Jones to 360 months' imprisonment. On direct appeal, we affirmed. United States v. Jones, No. 97-4107, 1998 WL 761542 (4th Cir. Nov. 2, 1998) (per curiam), cert. denied, 528 U.S. 853 (1999).

Jones filed a § 2255 motion for post-conviction relief in October 2000, alleging eight grounds for relief, primarily based on ineffective assistance of counsel. The district court denied Jones's motion, and we dismissed his subsequent appeal. United

5

States v. Jones, 35 F. App'x 382, 383 (4th Cir. 2002) (per curiam).

Following Jones's unsuccessful § 2255 motion, he successfully obtained orders from Florida state courts vacating his two prior convictions. The 1990 marijuana conviction was vacated on February 18, 2004, and the 1994 firearm conviction was vacated on November 7, 2008.

Jones thereafter filed two pro se motions to obtain relief from his 1996 federal drug trafficking sentence based on the vacaturs of his two Florida convictions. On November 6, 2009, he filed a motion under 28 U.S.C. § 2241, and on November 17, 2009, he filed a motion under Federal Rule of Civil Procedure 60(b)(5). The district court treated both as motions under § 2255 and dismissed them as successive. We thereafter denied Jones's requests for a certificate of appealability and for authorization to file a successive § 2255 motion. United States v. Jones, 403 F. App'x 856, 857 (4th Cir. 2010) (per curiam).

Finally, in March 2012, Jones filed the instant § 2255 motion, again contending that he should be resentenced in light of the vacaturs of his two prior Florida state convictions. He argued that this motion should not be dismissed as successive because his prior state convictions were vacated after he had filed his original § 2255 motion in October 2000. Therefore, he

6

argued, his October 2000 motion could not have raised the issue of the effect of his vacaturs.

The district court did not rule on whether Jones's § 2255 motion was successive but, instead, dismissed it as untimely under 28 U.S.C. § 2255(f)(4), which provides for a 1-year limitation period, running from "the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence." The court pointed out that the facts giving rise to Jones's § 2255 motion first became known to him no later than when he received notice of the latter of the two vacaturs on November 7, 2008. Consequently, his § 2255 motion filed in March 2012 was untimely. Finding no extraordinary circumstances that would justify equitable tolling or that would allow Jones to benefit from the filing date of his timely but previously dismissed § 2241 motion (filed on November 6, 2009), the court dismissed the § 2255 motion. It did, however, grant Jones a certificate of appealability on the issue of whether his instant motion was timely filed.

Jones filed this appeal and now argues that McQuiggin v. Perkins, which was decided after the district court's order, should provide him with relief from the 1-year limitation period in § 2255(f)(4), as he is actually innocent of his sentence.

As noted, the two Florida state convictions that were used, in part, to enhance Jones's 1996 federal sentence were vacated in 2004 and 2008, respectively. Thus, his § 2255 motion based on those vacaturs and filed in 2012 was not filed within one year of when he learned of the vacaturs, and therefore it failed to comply with § 2255(f)(4).[2] As the Supreme Court has noted, in the context of a § 2255 challenge made "on the ground that a state conviction used to enhance [a federal] sentence has since been vacated," the 1-year limitation period "begins when a petitioner receives notice of the order vacating the prior conviction, provided that he sought it with due diligence in state court." Johnson v. United States, 544 U.S. 295, 298 (2005); see also United States v. Gadsen, 332 F.3d 224, 227-29 (4th Cir. 2003).

Jones contends that because "he is innocent of his current federal sentence," we should exercise "the traditional, equitable power of federal courts" and grant him relief from the bar of § 2255(f)(4). He relies on the Supreme Court's recent

---

[2] Section 2255 authorizes the court that imposed a federal sentence "to vacate, set aside or correct the sentence," 28 U.S.C. § 2255(a), and § 2255(f) imposes a "1-year period of limitation" for filing the motion, which "shall run from the latest of [several stated dates, one of which is] the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," id. § 2255(f)(4).

decision in McQuiggin, which held that, in extraordinary circumstances, a defendant who demonstrates actual innocence of his crime of conviction may proceed with a habeas petition that otherwise would have been statutorily time-barred under AEDPA. Thus, he asks us to apply a rule providing for relief based on actual innocence of a crime of conviction to a situation where he is actually innocent of a federal sentence. His claim for relief is grounded on the fact that his sentencing range -- without the enhancements caused by the two Florida convictions -- would have been 292 to 365 months' imprisonment, whereas the range that the district used in sentencing him was 360 months' to life imprisonment.

In response, the government argues that McQuiggin is inapposite because Jones "has not even attempted to claim that he is actually innocent of the [federal] charge for which he was convicted. Rather, he attempts to use the term 'actual innocence' to assert that his criminal history category was improperly calculated."

It is true that the Supreme Court has recognized a limited "actual innocence" exception to certain procedural bars to habeas review. Under the exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ [of habeas corpus] even in the absence

9

of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986) (emphasis added); see also McQuiggin, 133 S. Ct. at 1931 ("In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief"); Bousley v. United States, 523 U.S. 614, 623 (1998). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404 (1993). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Schlup v. Delo, 513 U.S. 298, 324 (1995). But the Court has been clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare" and the exception only applies in limited circumstances: "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327; see also House v. Bell, 547 U.S. 518, 537 (2006).[3]

---

[3] In addition to cases where the petitioner alleges actual

10

Until 2013, the Court had applied the actual innocence exception only to circumvent judge-made procedural barriers to relief, such as procedural default; it had never spoken on whether actual innocence could provide an exception to a statutory bar, such as the § 2255(f)(4) time limit. But in McQuiggin, the Court did so for the first time, allowing an actual innocence claim to proceed in the face of the statutory time bar in 28 U.S.C. § 2244(d)(1)(D). In that case, McQuiggin had been convicted of murder in state court, based primarily on the testimony of three witnesses, including one eyewitness. McQuiggin, 133 S. Ct. at 1929. Later, however, he obtained affidavits from three other witnesses, whose testimony strongly implied his innocence. Id. at 1929-30. McQuiggin eventually

innocence of his crime of conviction, the Supreme Court has held that the exception can apply to cases in which the petitioner alleges actual innocence of a death penalty sentence. Though it has noted that the concept of actual innocence "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense," Smith v. Murray, 477 U.S. 527, 537 (1986), the Supreme Court has nevertheless held that where the petitioner can show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty," he may be permitted to file a habeas claim that would otherwise be procedurally defaulted, Sawyer v. Whitley, 505 U.S. 333, 348, (1992). Cf. Dretke v. Haley, 541 U.S. 386, 388-89 (2004) (declining to decide "whether [the actual innocence] exception applies where an applicant asserts 'actual innocence' of a noncapital sentence"); Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989) (recognizing the Court's actual innocence of capital sentence holding in Smith, but declining "to define what it means to be 'actually innocent' of a death sentence").

11

filed a § 2254 habeas petition alleging ineffective assistance of counsel, but not until nearly six years after he obtained the last of the affidavits, rendering his petition untimely under the 1-year time limit provided in § 2244(d)(1)(D). Id. at 1930. Despite the statutory bar, the Supreme Court extended the actual innocence exception it had previously applied in Schlup -- namely, that "a convincing showing of actual innocence enable[s] habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims." Id. at 1928. In applying the exception to the statutory context, the court emphasized the importance of avoiding unjust convictions, reasoning that "[s]ensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." Id. at 1932.

Jones now asks us to extend the reasoning of McQuiggin, in which the petitioner claimed actual innocence of his crime of conviction, to his case, in which he asserts actual innocence of his sentence. For several reasons, we decline to do so.

First, the McQuiggin Court made no explicit indication that its holding was intended to be applied to the actual innocence of sentence context, and its language and reasoning belie such a conclusion. The Court only discussed the miscarriage of justice exception in the context of actual innocence of conviction, and even then, it explicitly noted the limited nature of the

12

exception. It said, "The miscarriage of justice exception, we underscore, applies to a <u>severely confined category</u>: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have <u>convicted</u> [the petitioner].'" <u>McQuiggin</u>, 133 S. Ct. at 1933 (alteration in original) (emphasis added) (quoting <u>Schlup</u>, 513 U.S. at 329). And such limiting language in <u>McQuiggin</u> was not isolated. Indeed, it was pervasive throughout the opinion. <u>See, e.g.</u>, <u>id.</u> at 1936 ("We stress once again that the <u>Schlup</u> standard is demanding. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial" (quoting <u>Schlup</u> 513 U.S. at 316) (internal quotation marks omitted)).

In addition, the <u>McQuiggin</u> standard, which was derived from the <u>Schlup</u> concern about incarcerating the innocent, cannot, as a substantive matter, be easily applied to a sentencing decision. Innocence of conviction implicates the notion that a person has been incarcerated for a crime he did not commit, whereas a sentencing error does not at all implicate guilt. <u>See, e.g.</u>, <u>McQuiggin</u>, 133 S. Ct. at 1935 (noting that its exception to the statutory time bar was based on a petitioner's showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" (quoting <u>Schlup</u>, 513 U.S. at 327) (internal quotation marks

13

omitted); id. at 1935 n.3 (defending the actual innocence exception "when what is at stake is a State's incarceration of an individual for a crime, it has become clear, no reasonable person would find he committed"); id. at 1928 (articulating similar standard).

Despite the restrictive scope of the McQuiggin Court's holding, Jones nonetheless claims that McQuiggin "draws no distinction between actual innocence of conviction and actual innocence of sentence claims." He argues that because McQuiggin is based on the same "miscarriage of justice" framework applied in the actual innocence of death penalty cases, see, e.g., Sawyer v. Whitley, 505 U.S. 333, 348 (1992), the application of McQuiggin to the actual innocence of sentence context is a "natural outgrowth." This argument, however, applies the term "miscarriage of justice" to practically any error, without recognizing that various circumstances present varying degrees of injustice.

In Schlup, the very case that McQuiggin extended to provide relief from a statutory limitation period, the Court outlined the stark differences between claims involving actual innocence of a crime of conviction and claims involving actual innocence of a capital sentence. It noted that a petitioner claiming actual innocence of his crime of conviction need only show that it is more likely than not that no reasonable juror would have

14

found him guilty beyond a reasonable doubt in light of new evidence (the standard from Carrier), whereas a petitioner claiming actual innocence of his capital sentence must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty (the standard from Sawyer). The Court fully explained the distinction between the two types of claims:

> Claims of actual innocence pose less of a threat to scarce judicial resources and to principles of finality and comity than do claims that focus solely on the erroneous imposition of the death penalty. Though challenges to the propriety of imposing a sentence of death are routinely asserted in capital cases, experience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful. . . .

> Of greater importance, the individual interest in avoiding injustice is most compelling in the context of actual innocence. The quintessential miscarriage of justice is the execution of a person who is entirely innocent. Indeed, concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. . . .

Schlup, 513 U.S. at 324-27 (emphasis added) (footnote and citation omitted). Thus, Schlup makes clear that not all miscarriage of justice claims are equivalent. And Schlup only

15

compared actual innocence of the crime of conviction with actual innocence of a <u>death penalty</u> sentence -- a substantial step removed from the noncapital sentencing context to which Jones now asks us to apply the <u>McQuiggin</u> extension of the exception.

Because the "miscarriage of justice" in this case is significantly different from that of <u>McQuiggin</u>, we do not find Jones's abstract reference to that term to be a basis for extending the reasoning of <u>McQuiggin</u> to this case. This case involves, more modestly, the elimination of a sentencing enhancement to reduce a sentencing range from 360 months to life imprisonment to a range of 292 to 365 months' imprisonment. Moreover, we note that Jones's actual sentence of 360 months' imprisonment in this case fell within both ranges.

At bottom, we conclude that <u>McQuiggin</u> does not extend to cases in which a movant asserts actual innocence of his sentence, rather than of his crime of conviction. Indeed, we have found no case that has granted a movant relief on such a basis. <u>See, e.g.</u>, <u>Sims v. United States</u>, No. 1:04-CR-0048-ODE-JFK-1, 2014 WL 229335, at *2 (N.D. Ga. Jan. 21, 2014) (declining to extend <u>McQuiggin</u> to an actual innocence of sentence claim); <u>Hall v. United States</u>, No. 4:12-02462-TLW, 2014 WL 130446, at *5 (D.S.C. Jan. 14, 2014) ("Petitioner does not claim that he is actually innocent of the charge for which he was convicted. Rather, Petitioner claims actual innocence of his sentence as a

16

career offender.  Therefore, because Petitioner is not asserting actual innocence as to his crime of conviction, McQuiggin provides no relief"); Ellerman v. Walton, No. 13-cv-063-CJP, 2014 WL 103831, at *3 (S.D. Ill. Jan. 10, 2014) ("McQuiggin discussed only a claim of actual innocence of the conviction" and thus "does not apply here"); Kizziah v. United States, No. 7:13-cv-8042-VEH-JEO, 2014 WL 51282, at *6-7 (N.D. Ala. Jan. 7, 2014) (holding that petitioner failed to demonstrate factual innocence and noting that "[t]hus far, the Supreme Court and the Eleventh Circuit have recognized that the actual innocence doctrine applies in only two contexts:  where the defendant claims that he is actually innocent of the crime of conviction and where a defendant claims that he is actually innocent of a capital sentence"); Monroe v. United States, No. 3:13-CV-2546-G(BK), 2013 WL 6199955, at *4 (N.D. Tex. Nov. 26, 2013) (noting that "the Supreme Court has applied the actual innocence exception only when the petitioner is actually innocent of the crime of conviction or of the capital sentence"); United States v. Robinson, No. 10-40037, 2013 WL 5874012, at *3 (D. Kan. Oct. 30, 2013) ("Since the defendant is not asserting his innocence on his crime of conviction, McQuiggin provides no relief"); Clayton v. United States, No. 1:12-cv-109-MR, 2013 WL 3381373, at *3 (W.D.N.C. July 8, 2013) ("Petitioner admitted his guilt. He merely claims that his sentence was calculated incorrectly.

17

*McQuiggin* has no applicability to this situation"). But see *Hallman v. United States*, No. 3:05-376, 2013 WL 4647536 (D.S.C. Aug. 29, 2013) (applying *McQuiggin* to the sentencing context in dictum).

We have found no case decided by the Supreme Court or a court of appeals to provide Jones with the relief he requests from a statutory limitation period. Jones does discuss at length three Fourth Circuit cases addressing an actual innocence of sentence exception. But, in each case, the exception was raised not in the context of a statute of limitations, but rather in the context of a judge-made procedural default rule. See *United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010); *United States v. Mikalajunas*, 186 F.3d 490 (4th Cir. 1999); *United States v. Maybeck*, 23 F.3d 888, 890-94 (4th Cir. 1994). Therefore, none of those cases can provide support for the notion that Jones can avoid, through the equitable power of a court, the 1-year limitation period fixed by Congress in § 2255(f)(4). His only potential route for such an argument would have to be through *McQuiggin*, and *McQuiggin* does not apply to habeas claims based on actual innocence of a sentence.

The judgment of the district court is

AFFIRMED.

18

KING, Circuit Judge, dissenting in part and concurring in the judgment in part:

Jones asks us to rule today that an AEDPA statute of limitations may be overcome by a showing of actual innocence of a non-capital sentence. To so hold, Jones would have us rely on the Supreme Court's recent decision in McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) (recognizing that actual innocence of a crime of conviction "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"), as well as our own line of cases beginning with United States v. Maybeck, 23 F.3d 888, 891-94 (4th Cir. 1994) (applying an actual innocence of non-capital sentence exception to a procedural bar). Under Jones's interpretation of that precedent, Maybeck's actual innocence of non-capital sentence exception operates, in the wake of McQuiggin, to surmount both procedural bars and AEDPA's time limitations.

The panel majority declares, however, "that McQuiggin does not extend to cases in which a movant asserts actual innocence of his sentence, rather than of his crime of conviction." Ante at 15. Concomitantly, the majority restricts Maybeck and its progeny to "the context of a judge-made procedural default rule." Id. at 17. In other words, the majority broadly concludes that no petitioner can ever overcome an AEDPA statute

19

of limitations by showing actual innocence of any non-capital —
or even capital — sentence.

Because the panel majority's sweeping decision is not only highly debatable, but also unnecessary to disposing of Jones's appeal, I dissent. Nevertheless, I concur in the judgment insofar as it affirms the district court. In getting to that result, I would assume that Maybeck's actual innocence of non-capital sentence exception may function under McQuiggin to overcome an AEDPA statute of limitations, but conclude that such exception cannot help Jones because he was not sentenced as a habitual offender. See United States v. Pettiford, 612 F.3d 270, 284 (4th Cir. 2010) (explaining that the Maybeck exception applies only "in the context of habitual offender provisions" and only then "where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes").

That is, I would leave for another day — and a more appropriate case — the question of whether AEDPA's time limitations foreclose a late-filed claim alleging actual innocence of a non-capital (or capital) sentence.[*] I therefore dissent in part and concur in the judgment in part.

---

[*] Notably, in many of the district court decisions cited favorably by the panel majority, see ante at 15-17, the courts did exactly what I propose we do today: They exercised judicial

20

restraint and refrained from unnecessarily deciding whether a showing of actual innocence of sentence may be sufficient to overcome an AEDPA statute of limitations. See Sims v. United States, No. 1:04-cr-0048, 2014 WL 229335, at *2 (N.D. Ga. Jan. 21, 2014) (acknowledging possible existence of exception premised on actual innocence of non-capital sentence, but concluding that movant did not make requisite showing of factual, rather than mere legal, innocence); Kizziah v. United States, No. 7:13-cv-8042, 2014 WL 51282, at *6-7 (N.D. Ala. Jan. 7, 2014) (same); Monroe v. United States, No. 3:13-cv-2546, 2013 WL 6199955, at *4 (N.D. Tex. Nov. 26, 2013) (same); United States v. Robinson, No. 10-40037, 2013 WL 5874012, at *3 (D. Kan. Oct. 30, 2013) (same).